Argued October 5, 1965, affirmed January 26, 1966

# STATE OF OREGON *v.* JONES
410 P. 2d 219

*George A. Haslett, Jr.,* Portland, argued the cause and filed a brief for appellant.

*George M. Joseph,* Deputy District Attorney, Portland, argued the cause for respondent. On the brief were George Van Hoomissen, District Attorney, and Jacob B. Tanzer, Deputy District Attorney, Portland.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

DENECKE, J.

The defendant is appealing his conviction of the crime of burglary not in a dwelling.

When the employees of a store in Portland came to work on a Monday morning, they found the store burglarized. The investigating officer found that the burglar had gained access by breaking a hole in the glass in a door, reached through the hole and turned the door knob on the inside and thereby opened the door. The officer examined the wooden door frame near the knob and the hole in the glass and found a fingerprint.

The fingerprint was subsequently identified as that of the defendant. This was the only evidence connecting the defendant with the crime. The defendant called no witnesses.

The defendant contends that it was error to admit testimony of defendant's statements made during police interrogation because the defendant had not

been warned of his rights as required in *State v. Neely,* 239 Or 487, 395 P2d 557, 398 P2d 482 (1965). The defendant had not been warned and he was in custody when the statements were made.

The defendant particularly objects to the officer's testimony that defendant stated he had never been in the store which was burglarized. Defendant argues in his brief:

> "Inasmuch as the only evidence connecting the defendant with the breaking and entering this public retail store, was a latent fingerprint found on the door of the establishment, his statement under police interrogation that he had never been in the place of business undoubtedly had a damaging effect in the eyes of the jury. &ast; &ast; &ast;"

The state argued in its brief that the statement was neither a confession nor an admission, but rather was exculpatory at the time made, and, therefore, the requirements of *State v. Neely,* supra, did not apply. We need not and do not decide here whether statements exculpatory at the time they are made are covered by *State v. Neely,* supra. Even if the admission of the statement is assumed to be error, its admission was not prejudicial and, therefore, was harmless error.

The problem of whether there is constitutional error which is harmless error is not completely solved. In *Fahy v. Connecticut,* 375 US 85, 84 S Ct 229, 1 L ed2d 171 (1963), the majority stated:

> "On the facts of this case, it is not now necessary for us to decide whether the erroneous admission of evidence obtained by an illegal search and seizure can ever be subject to the normal rules of 'harmless error' under the federal standard of what constitutes harmless error. Compare Ker v. California, 374 US 23. We find that the erroneous

admission of this unconstitutionally obtained evidence at this petitioner's trial was prejudicial; therefore, the error was not harmless, and the conviction must be reversed. * * *" 375 US at 86.

In determining whether error is harmless, the same opinion states the test to be, "* * * whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." 375 US at 86-87.

The erroneous admission of constitutionally inadmissible *confessions* has been consistently held to require reversal, regardless of the weight of the other evidence of guilt. *Lynumn v. Illinois,* 372 US 528, 83 S Ct 917, 9 L ed2d 922 (1963); *Payne v. Arkansas,* 356 US 560, 78 S Ct 844, 2 L ed2d 975, 981 (1958). In the latter case, the court quotes from *Stein v. New York,* 346 US 156, 73 S Ct 1077, 97 L ed 1522 (1953), to the effect that the admission of a constitutionally improperly taken confession "vitiates a conviction because such a confession combines the persuasiveness of apparent conclusiveness with what judicial experience shows to be illusory and deceptive evidence. A forced confession is a false foundation for any conviction." 356 US at 568, n 15.

The California court has pointed out that the admission of constitutionally inadmissible evidence other than confessions does not necessarily have that all-contaminating influence of a confession and, therefore, may not always be grounds for reversal. *People v. Parham,* 60 Cal2d 378, 33 Cal Rptr 497, 384 P2d 1001, 1005 (1963). The court stated:

"Unlike involuntary confessions, other illegally obtained evidence may be, as in this case, only a relatively insignificant part of the total evidence and have no effect on the outcome of the trial. To

require automatic reversal because of its admission is to lose sight of the basic purpose of the exclusionary rule to deter unconstitutional methods of law enforcement. * * *"

In the *Parham* case when the officers started to arrest the defendant, he put a check into his mouth and started to chew it. The officer hit him twice on the back of the neck and defendant spit out the check. The court held this method of obtaining the check violated due process. Nevertheless, upon the ground above stated, the conviction was affirmed.

California has applied the same rule to the admission of statements which may have been incriminating but did not amount to confessions and were taken without advising the defendant of his right to remain silent and his right to counsel. *People v. Hillery,* 62 Cal2d 692, 44 Cal Rptr 30, 401 P2d 382, 395 (1965); *People v. Robinson,* 62 Cal2d 889, 44 Cal Rptr 762, 402 P2d 834, 838-839 (1965).

In *People v. Jacobson,* 63 Cal2d 319, 46 Cal Rptr 515, 405 P2d 555 (1965), the California court even applied the harmless-error rule to confessions. The court considered it a rare case because there were eight confessions given which were constitutionally admissible and only the last two, which were no different than the others, were constitutionally inadmissible.

From the record before us it appears that the defendant's contention at trial was not that the fingerprint had been made by the defendant when he was in the store on a legitimate mission, but rather that the fingerprint was not that of the defendant. Now the defendant contends that the defendant's statement to the officer was prejudicial because if it had been ex-

cluded the jury may reasonably have found that the print was made by the defendant when he was in the store for a legitimate purpose. We conclude that it is most improbable that any jury would have found that the print was made while the defendant was in the store on an innocent mission. The officer described what he observed as follows: "* * * the glass was broken in this position (pointing) in just an area a hand could reach through, and in reaching through, you could see part of the finger [print] on the wood, coming around this door (pointing), and this part of the finger (pointing)." The officer's opinion on how the print was made was in a report which the defendant introduced into evidence on cross-examination of the officer. The officer's opinion was that the print "[w]as located in such a position as to have been left there by someone after the glass had been broken." The glass had been broken after the store was locked Saturday afternoon and was not discovered until it was being opened Monday morning.

The only reasonable conclusion that can be drawn from the evidence is that the fingerprint was made by someone reaching through the hole in the glass and groping for the knob to open the door. We conclude that there is no "reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut,* supra (375 US at 86-87).

Defendant also contends that the trial court erred in denying his motion for a mistrial made "* * * on the grounds * * * that counsel has brought before the jury, by way of State's Exhibit 2 for identification, a document which is obvious, and the jury are well aware is a document of the police department

records of a person who has been involved in a crime
\* \* \*."

Exhibit 2 is the police department's identification card on defendant; among other things, it contains his fingerprints. The state had the exhibit identified and handed to the witness, who was a fingerprint specialist, so that he could, in the presence of the jury, compare the print shown on the identification card with the print found in the store and then state that they were identical. The prints on the exhibit had been taken prior to defendant's arrest for the offense with which he is now charged. The card also contains a record of prior arrests and convictions. The card was offered, but the trial court rejected it because portions of it, presumably the past convictions, were inadmissible, and its identification was incomplete.

■■ We have consistently held that a motion for a mistrial is addressed to the sound discretion of the trial judge. *State v. Hoffman,* 236 Or 98, 108, 385 P2d 741 (1963). That is particularly true in this case. The fingerprints on the card might well have been thought to have been obtained when he was arrested for this particular crime. Therefore, the fact that defendant's fingerprints were on the card is not evidence that he has been convicted, or even arrested, for other crimes. With regard to the other material on the exhibit, the trial record only indicates that it was in the hands of the witness and the state and not in the hands of the jury. The trial judge had the opportunity to observe whether there was a possibility that the jury could observe this other data on the exhibit or, because of other circumstances not in the record, know the significance of the exhibit.

We hold that the court did not err in denying the motion.

■ The same observations are partially applicable to defendant's charge that the trial court erred in refusing to grant another motion for mistrial. This was upon the ground that the state's witness "injected, unresponsive to my question, the defendant being in custody for another crime * * *." After reading the direct and the cross-examination, during which the objectionable answer occurred, we conclude that the defendant "asked for" the objectionable answer and any error was invited.

Affirmed.

GOODWIN, J., dissenting.

I do not agree that the questioned evidence was nonprejudicial. The reason the state offered the evidence was to help convict the defendant. It is not unlikely that the proof that the defendant had been in the building, when embellished by his statement to the police that he had never been in the building, satisfied the jury that the defendant was the burglar.

The more difficult question, in my opinion, is whether the exclusionary rule of the *Neely* case ought to apply to interrogation of the kind involved in the case at bar. The majority assumes that the Fifth and Sixth Amendment rights as defined in the *Neely* case were available to this defendant. I see no reason, then, to evade that decision by subtle distinctions. The defendant is entitled to a new trial in which the questioned evidence is excluded. As in most of these cases, the difficulty could be avoided by promptly taking an arrested person before a magistrate. ORS 133.550.

LUSK, J., joins in this dissent.