**STATE of Minnesota, Respondent,**

v.

**John Earl TURNIPSEED, Appellant.**

**No. 50229.**

Supreme Court of Minnesota.

Sept. 12, 1980.

C. Paul Jones, Public Defender, and Mary E. Steenson, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief, Appellate Section, Asst. County Atty., David W. Larson and Toni A. Beitz, Asst. County Attys., and Thomas A. Weist, Minneapolis, for respondent.

Heard before TODD, YETKA, and SCOTT, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

On January 15, 1979, defendant was charged with the burglary of Yorkshire Manor Nursing Home in Minneapolis as a

result of a break–in which occurred on November 24–25, 1978. Defendant pleaded not guilty to the charge. An omnibus hearing was held on March 12, 1979, and the matter was tried by a jury in Hennepin County District Court beginning on March 14, 1979. On March 15, the jury found defendant guilty as charged. Defendant was subsequently sentenced to 0–5 years in prison. Defendant appeals from the denial of his motions to vacate the judgment and for a new trial. We affirm.

At 8:00 a. m. on Saturday, November 25, 1978, Roy Curlin, a resident of Yorkshire Manor in Minneapolis, noticed that the sliding glass window between the receptionist's office and a communal sitting room on the first floor was open. This was unusual because the window had been closed and locked for the past year and the key had been lost. Richard Gibson, the administrator of Yorkshire Manor, was notified at his home. When Gibson arrived at the Manor shortly thereafter, he noted that the door to the receptionist's office was closed and locked, as it usually was when the receptionist was not present, but that the left side of the sliding glass window had been lifted out of the track and left inside the office, leaning against the other pane. Gibson also discovered that his office had been entered, and the keys to his filing cabinet had been taken from his desk drawer and used to open the cabinet. Gibson's office is located in the basement directly under the sitting room, and can be reached by going down a stairway, through a fire door, and through the bookkeeper's office. The doors to both rooms are customarily locked, but a police officer testified that the locks could be easily "case–knifed" or opened by means of a plastic card or penknife. Approximately $475 in cash and checks was missing from the file cabinet in Gibson's office, and a box containing personal papers and jewelry belonging to one of the residents was missing from the receptionist's office.

Gibson notified the police and they conducted an investigation. A tennis shoe print was found on a file cabinet under the open window inside the receptionist's office, but it was not sufficiently complete to be used for identification purposes. Latent fingerprints were lifted from both sides of the removed sliding window and from the basement file cabinet. These prints did not match those of the suspects named by Yorkshire Manor personnel, but one of the window fingerprints was entered into a computerized fingerprint comparison system and matched to that of defendant. The police obtained a new set of inked fingerprints from defendant, and two police identification experts testified that they were positive that all of the fingerprints left on the sliding window belonged to defendant. None of the fingerprints found on the filing cabinet matched those of defendant or any other suspect.

Gene Aschbrenner, a member of the maintenance staff at Yorkshire Manor, testified that he had washed both sides of the sliding window on November 22, three days before the burglary. Washing glass removes existing fingerprints, and no prints other than those of defendant were found on the glass.

After the police learned that the fingerprints left on the sliding window matched those of defendant, Officer Becking asked defendant if he would come in to the police station. Defendant did so on January 8, 1979. Becking informed defendant that the police were investigating a burglary at Yorkshire Manor, and testified that he read defendant his *Miranda* rights. In response to Becking's questions, defendant stated that he had never been employed at Yorkshire Manor, that he knew no employees or residents of the manor, and that he did not recall ever having been there. Defendant also said that on the evening of November 24, he had not been feeling well and spent a considerable time in bed but that he may have gone to a local bar.

Defendant raises four issues on appeal:

(1) Did the trial court's denial of defendant's request for a continuance impair defendant's right to a fair trial?

(2) Did the trial court's instruction to the jury on circumstantial evidence properly state the law?

(3) Did the state present sufficient evidence for the jury to find defendant guilty of the offense of burglary?

(4) Did the trial court properly refuse to instruct the jury regarding the offense of trespass?

1. On the day set for trial, March 12, 1979, defendant's attorney learned that the state did not intend to call as a witness Marge Johnson, the receptionist at Yorkshire Manor, because she was on vacation out of state. Defendant's attorney had previously interviewed Johnson, and advised the trial court that Johnson would testify that on one occasion a man generally answering defendant's description had entered her office at Yorkshire Manor while she was absent. Upon her return, the man asked if he could use her telephone because his car had broken down. Johnson refused, and the man left. Defendant's attorney stated that Johnson's testimony would corroborate the testimony of Morrie Latzer, who was with defendant when the incident occurred. Defendant claimed that he remembered the incident only after he told Becking that he did not recall ever being inside Yorkshire Manor. Defendant's attorney argued that the testimony of Johnson and Latzer would show that defendant had been in the receptionist's office on this occasion and could have left his fingerprints on the window then. However, Johnson was unable to identify defendant from a photograph as the man in her office, and thus it is uncertain whether Johnson could have identified defendant in court. Moreover, Johnson could not remember when the incident occurred.

Defendant's attorney could have subpoenaed Johnson as a witness himself but chose not to for tactical reasons: he believed that her testimony corroborating defendant's prior visit to Yorkshire Manor would be more valuable if Johnson were presented as a witness for the state. Defendant's attorney did not inquire as to Johnson's availability on the date set for trial when he interviewed her.

Defendant's attorney requested a continuance from the chief judge of the criminal bench in Hennepin County District Court and from the trial court. Both judges denied his request. The trial court characterized defense counsel's actions as a tactical move that failed. The court based its denial of the request for a continuance at least in part on defense counsel's statement that Johnson's testimony was desired because it would corroborate Latzer's testimony: the court stated that Johnson's testimony would not be determinative because the witness who accompanied defendant to Yorkshire Manor was available to testify. During the trial, however, defendant's attorney chose not to have either Latzer or the defendant testify about defendant's previous visit to the Manor, and therefore this line of defense was never presented to the jury.

The decision to grant or deny a motion for continuance lies within the sound discretion of the trial court and will only be reversed upon a showing of abuse of discretion. *State v. Beveridge*, 277 N.W.2d 198 (Minn.1979); *State v. Bell*, 275 Minn. 541, 146 N.W.2d 597 (1966). The reviewing court must examine the circumstances before the trial court at the time the motion was made to determine whether the trial court's decision prejudiced defendant by materially affecting the outcome of the trial. *State v. Beveridge, supra*; *State v. Fagerstrom*, 286 Minn. 295, 176 N.W.2d 261 (1970). We have held in several cases that the trial court did not abuse its discretion in denying a party's request for a continuance when the request was based on the absence of a witness. *E. g., State v. Annis*, 308 Minn. 232, 241 N.W.2d 482 (1976); *State v. Holmes*, 281 Minn. 294, 161 N.W.2d 650 (1968).

In the present case, defendant's attorney told the trial court that Johnson's testimony would be used to corroborate the testimony of another witness. Defense counsel could have subpoenaed Johnson but chose not to for tactical purposes. Thus, the absence of Johnson as a witness was of defense counsel's own doing. Defendant does not claim that his attorney's tactical error amounted to incompetence or inadequate representation. Furthermore, the

claim that Johnson's testimony would have affected the outcome of the trial is not supported by a fair reading of the record. Even if Johnson were able to identify defendant as the man who stopped in to use the phone, and could place the incident within three days before the burglary so that defendant's fingerprints would have remained on the glass, the jury was certainly not bound to conclude that defendant's fingerprints were left on the glass during this earlier incident; indeed, the placement of the fingerprints (at the top of the glass, on both sides, as if the window had been gripped while out of its frame) makes the inference almost incredible. The weakness of this defense on the merits is supported by the fact that defendant's attorney chose not to introduce this theory at trial through the testimony of Latzer or defendant. Defendant's assertion that he and Latzer would also have testified if Johnson's testimony had been available is merely gratuitous. Therefore, we hold that the trial court did not abuse its discretion by denying defendant's motion for a continuance.

2. Defendant argues that the instruction given by the trial court on circumstantial evidence constitutes reversible error because it did not include a critical phrase contained in the Criminal Jury Instruction Guide (CRIM JIG). CRIM JIG 3.05 provides in part:

> Circumstantial evidence may be of the highest and most conclusive kind of proof, but in order to reach a conclusion beyond a reasonable doubt on circumstantial evidence alone, all circumstances proved must be consistent with that conclusion and inconsistent with any other rational conclusion.

10 Minn.Prac., CRIM JIG 3.05 (1977). Defendant claims that under Minnesota law, it is necessary that all circumstances proved must be inconsistent with any other rational conclusion. The trial court's instruction explained the differences between direct and circumstantial evidence and the degree of proof required to find defendant guilty, but did not state that all circumstances proved must be inconsistent with any other conclusion. The trial judge stated that he omitted the CRIM JIG instruction and substituted his own because he had certain reservations about the pattern instruction.

■ Defendant implies in his brief that he is entitled to have the CRIM JIG instruction and that deviation from the pattern instruction is prima facie evidence of error. The law does not support defendant's contention. Rather, a party must show that the substituted instruction contained a material misstatement of law when read in the context of the instructions as a whole. *State v. Columbus*, 258 N.W.2d 122 (Minn. 1977).

■ Although the phrase "inconsistent with any other rational conclusion" has appeared in many of the cases concerning circumstantial evidence decided by this court, we have never held the phrase to be mandatory. Moreover, most of those cases involved issues about the sufficiency of the evidence, not the form of the jury instruction. Other courts have emphasized that tests for sufficiency of evidence to support a conviction should be distinguished conceptually from jury instructions, and that not every sufficiency of evidence test should be read to the jury. *United States v. Cooper*, 577 F.2d 1079, 1085 (6th Cir.), *cert. denied*, 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978); *United States v. Hansbrough*, 450 F.2d 328–29, (5th Cir. 1971). In *United States v. Kolsky*, 423 F.2d 1111 (5th Cir. 1970), the court of appeals stated: "Although the 'reasonable hypothesis' test [similar to the phrase at issue in the instant case] is to be applied by the court in assessing circumstantial evidence * * * a specific instruction to the jury relative thereto has been disparaged by the Supreme Court" 423 F.2d at 1113 (citations omitted).

In a few cases, this court has specifically addressed the issue of proper jury instructions on circumstantial evidence. In *State v. Hentschel*, 173 Minn. 368, 217 N.W. 378 (1928), we upheld the adequacy of a circumstantial evidence instruction that did not contain the phrase at issue. In *State v. Pankratz*, 238 Minn. 517, 57 N.W.2d 635

(1953), and *State v. Brady*, 244 Minn. 455, 70 N.W.2d 449 (1955), we approved jury instructions on circumstantial evidence that did contain the phrase in question, but we did not state that the phrase is necessary. Moreover, the defendants in those two cases did offer evidence which, if believed, would explain the facts relied upon by the state; in the instant case, by contrast, defendant's explanation for his fingerprints on the glass (that he stopped in one day to use the phone) was never presented to the jury.

The United States Supreme Court has questioned the value of jury instructions similar to the phrase at issue in the present case. In *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), *reh. denied*, 348 U.S. 932, 75 S.Ct. 334, 99 L.Ed. 731 (1955), petitioners challenged the trial court's refusal to instruct the jury that where the government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt. The Supreme Court stated:

> There is some support for this type of instruction in the lower court decisions * * * but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect.

348 U.S. at 139–40, 75 S.Ct. at 137 (citations omitted). Lower federal courts have consistently followed *Holland* and held that if there is an adequate instruction on reasonable doubt, it is not error to refuse an instruction that circumstantial evidence must exclude every reasonable hypothesis other than guilt. *See, e. g., United States v. Cooper*, 577 F.2d 1079, 1085 (6th Cir.), *cert. denied*, 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978); *United States v. Kirk*, 534 F.2d 1262, 1279 (8th Cir. 1976); *United States v. Pipkins*, 528 F.2d 559, 564 (5th Cir.), *cert. denied*, 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1191 (1976); *United States v. Warren*, 453 F.2d 738, 745 (2nd Cir. 1972). The phrase is also omitted from the federal pattern jury instruction on circumstantial evidence. 1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 15.02 (3d ed. 1977).

■ Defendant does not challenge the adequacy of the trial court's instruction on reasonable doubt in this case. Therefore, in light of *Holland* and its progeny, we conclude that the instruction given by the trial court on circumstantial evidence was adequate and proper.

■ 3. Defendant claims that the evidence presented by the state at trial is insufficient as a matter of law to support his conviction. The basic principles for evaluating the sufficiency of the evidence were recently reviewed in *State v. Merrill*, 274 N.W.2d 99 (Minn.1978), in which this court stated:

> In reviewing a claim of insufficiency of the evidence, we are limited to ascertaining whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged. *State v. Whelan*, 291 Minn. 83, 85, 189 N.W.2d 170, 172 (1971); *State v. Norgaard*, 272 Minn. 48, 52, 136 N.W.2d 628, 631 (1965). We cannot retry the facts, but must take the view of the evidence most favorable to the state and must assume that the jury believed the state's witnesses and disbelieved any contradictory evidence. *State v. Darrow*, 287 Minn. 230, 235, 177 N.W.2d 778, 781 (1970); *State v. Ellingson*, 283 Minn. 208, 211, 167 N.W.2d 55, 57 (1969); *State v. Thompson*, 273 Minn. 1, 36, 139 N.W.2d 490, 515, *certiorari denied*, 385 U.S. 817, 87 S.Ct. 39, 17 L.Ed.2d 56 (1966). If the jury, giving due regard to the presumption of innocence and to the state's burden of proving the defendant's guilt beyond a reasonable doubt, could reasonably have found the defendant guilty, that verdict will not be reversed. *State v. Norgaard, supra*, 272 Minn. at 52, 136 N.W.2d at 632.

274 N.W.2d at 111.

■ In the present case, defendant does not challenge the assertion that the fingerprints found on the windowpane were his. Instead, he argues that this evidence is insufficient to connect him to the burglary.

Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence presented is sufficient to support the verdict. The sliding window to the receptionist's office at Yorkshire Manor, which was usually locked and could not be opened, was removed, and a footprint was found on the top of a cabinet underneath the window. The door was locked and there was no other possible entry to the office. Defendant's fingerprints, and no other prints, were found on both sides of the glass. The glass had been washed three days prior to the burglary. The fingerprints were located in such a position that it would have been difficult to make them any other way than by grasping both sides of the window simultaneously. Defendant did not introduce any evidence that he had been on the premises at any other time. Although this court has not yet addressed the issue of under what circumstances fingerprints alone are sufficient evidence to identify a defendant with a crime, other jurisdictions have sustained convictions based only on fingerprints. *See, e. g., People v. Vera*, 62 Cal.App.3d 293, 132 Cal.Rptr. 187 (1976); *People v. Atwood*, 223 Cal.App.2d 316, 35 Cal.Rptr. 831 (1964); *Hack v. Commonwealth*, 433 S.W.2d 877 (Ky.1968); *State v. Gray*, 504 S.W.2d 825 (Mo.App. 1974); *State v. Lane*, 497 S.W.2d 207 (Mo. App.1973); *State v. Jones*, 242 Or. 427, 410 P.2d 219 (1965). Although defendant speculates about other possible ways in which his fingerprints could have been left on the glass, there is no evidence in the record to support his speculations, and certainly no evidence which the jury was bound to accept that was consistent with any reasonable hypothesis of defendant's innocence or inconsistent with his guilt. *State v. Kotka*, 277 Minn. 331, 342, 152 N.W.2d 445, 452 (1967).

■ 4. Defendant's final contention is that the trial court erred in refusing to instruct the jury on the offense of trespass. Defendant argues that trespass is a lesser included offense of burglary, and that the evidence would reasonably support a conviction of trespass and an acquittal of burglary in this case.

Minn.Stat. § 609.04, subd. 1(4) (1978), defines "included offenses" to encompass "a crime necessarily proved if the crime charged were proved." Defendant claims that the trespass offenses contained in Minn.Stat. § 609.605, subds. 5 and 6, are included offenses of burglary, Minn.Stat. § 609.58, subd. 2(3). However, both trespass offenses contain elements of proof not necessary to proof of a burglary charge. Section 609.605, subd. 5, states in part that the defendant must have refused to depart from the premises of another upon the demand of the lawful possessor. This element of request is not an element of burglary. Section 609.605, subd. 6, states that the defendant must have entered the dwelling of another without his consent, and "dwelling" is defined to mean a building or part of a building used by an individual as a place of residence. The offense of burglary does not require the entering of a dwelling or place of residence, but only of a building.

Furthermore, the evidence in the present case would not reasonably support a conviction of trespass under either subd. 5 or subd. 6 of § 609.605. There is no evidence that defendant was requested to depart, as required by subd. 5, and the part of the building wrongfully entered was an office, not a residence, as required by subd. 6. Therefore, defendant's contention that the trial court should have instructed the jury on the offense of trespass has no merit.

Affirmed.

AMDAHL and SIMONETT, JJ., not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.