STATE of Minnesota, Respondent,

v.

Celia Mae SCOTT, Appellant.

No. C4-85-733.

Court of Appeals of Minnesota.

Oct. 22, 1985.

Review Denied Dec. 19, 1985.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for respondent.

C. Paul Jones, Minnesota Public Defender, Mollie G. Raskind, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and LESLIE and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

Appellant Celia Scott was convicted of attempted murder in the first degree and two counts of aggravated robbery. She claims that the evidence was insufficient to sustain her convictions, that one count of aggravated robbery must be vacated, and that her conviction and/or sentence was

unjustifiably disparate because a co-defendant was convicted of a lesser offense of attempted murder in the second degree. We affirm but vacate one of the aggravated robbery convictions.

## FACTS

On September 17, 1984, Richard Emerson, Jr. and his supervisor Howard Minnick were in St. Paul on business, staying at the Sheraton-Midway Hotel. The evening was spent socializing and drinking. Shortly after midnight they took a walk to get some fresh air and went to a 7-Eleven on University Avenue. They met appellant, a prostitute, who drove them back to their hotel in a brown Maverick.

Emerson went to his room and went to sleep. Appellant went with Minnick and negotiated a price for sex. Minnick's and appellant's testimony conflicted on whether they agreed on a price and whether they had sex, but appellant later went and knocked on Emerson's door. According to Emerson appellant took off her shirt and began talking about the costs for sexual activities. He testified he told her he wasn't interested, wouldn't pay the money and that he then escorted her out the door.

Appellant drove home, where she lived with Lane Williams and her son. Around 5:30 a.m., Williams and appellant drove back to the Sheraton. They entered through a darkened restaurant area, rather than the lobby, and knocked on Emerson's door. Appellant claimed they went to retrieve her purse.

When Emerson opened the door he testified Williams came crashing through the door with a knife trying to stab him. Emerson was cut between his thumb and index finger and on his small finger. Williams pushed his way in and appellant followed, locking the deadbolt. Emerson and Williams struggled; at one point appellant jumped on Emerson's back. Williams threatened to kill Emerson. He bit Emerson's neck and bit all the way through his left ear. Their fighting moved from the bedroom into the bathroom and back into the bedroom. While Emerson was yelling for help, appellant turned up the television volume to drown out the noise. Williams started choking Emerson and told appellant to help knock him out so he could cut Emerson's throat. Appellant hit Emerson on the head several times with his own shoe which had a heavy wooden shoe tree inside it.

By this time the front desk had been called about the noise. When an employee arrived, appellant, to dissuade the employee from coming in, made "moaning" noises to simulate that she was having sex very loudly. After further door pounding the door opened and appellant and Williams fled. The license of their brown Maverick was noted. Meanwhile, Emerson, now drenched in blood and partly in shock, obtained aid from Minnick. He suffered cuts to his face, nail marks on his neck, bite marks on his neck and ear, bumps on his head and cuts requiring stitches on his fingers. Emerson also found that money had been taken from his money clip.

Appellant testified that when she and Williams went back to the hotel Emerson threw her purse out into the hall. She claimed that Emerson went wild upon seeing Williams and immediately attacked Williams and tried to stab him with a knife. She acknowledged hitting Emerson with the shoe, turning up the television volume, and moaning to simulate sex. She also agreed she fled and was chased by a hotel employee.

Appellant and Williams were charged with attempted murder and aggravated robbery. Appellant was convicted of attempted murder in the first degree and two counts of aggravated robbery and was sentenced to 70 months for the attempted murder conviction. This was the presumptive sentence under the Minnesota Sentencing Guidelines. Williams later pleaded guilty to attempted murder in the second degree and sentenced to 81 months imprisonment. Williams' conviction was recently affirmed in *State v. Williams*, 373 N.W.2d 851 (Minn.Ct.App.1985).

## ISSUES

1. Was the evidence sufficient to sustain appellant's convictions for attempted murder in the first degree and aggravated robbery?

2. Is appellant entitled to have one of her aggravated robbery convictions vacated under Minn.Stat. § 609.04 (1984)?

3. Was appellant's conviction and sentence unjustifiably disparate from her co-defendant who was convicted and sentenced on a lesser offense?

## ANALYSIS

### I.

 Viewing the evidence in the light most favorable to the State as we must and assuming the jury believed the State's witnesses, the evidence was sufficient to sustain appellant's convictions. The thrust of appellant's argument relates to the credibility of the victim Emerson and credibility is a matter for the jury to resolve.

### II.

 The State concedes that Minn.Stat. § 609.04 (1984) precludes two convictions for aggravated robbery based on a single criminal act. Appellant was convicted of a single act of aggravated robbery based on being armed with a dangerous weapon and inflicting bodily harm.[1] The State agrees that appellant is entitled to have one of the convictions vacated, and we therefore vacate the conviction based on infliction of bodily harm.

### III.

 Appellant was sentenced to 70 months imprisonment, the guideline's presumptive sentence for attempted murder in the first degree. Her co-defendant Williams pleaded guilty to attempted murder in the second degree and was sentenced to 81 months imprisonment. While acknowledging that Minn.Stat. § 609.05 (1984) permits Williams to be convicted of a lesser degree of the crime, appellant contends that equity and fairness require a reduction in the level of her conviction and/or a reduction in sentence because Williams was the principal actor. We disagree with appellant's downplaying of her role in this incident. She did not play a passive role. She was the initiator of the entire episode and was a joint attacker of Emerson and took an active role in his beating. Appellant's arguments that she is entitled to a reduction in either the level of her conviction or in her sentence is without merit. *See State v. Williams,* 337 N.W.2d 387 (Minn.1983); *State v. Vazquez,* 330 N.W.2d 110 (Minn.1983). Her sentence was not unjustifiably disparate and she was not treated relatively harshly. She was given the presumptive sentence.

## DECISION

Evidence was sufficient to sustain appellant's convictions for attempted murder in the first degree and aggravated robbery. Under Minn.Stat. § 609.04, however, she is entitled to have an aggravated robbery conviction based on infliction of bodily harm vacated. There is no basis to reduce appellant's conviction or sentence.

Affirmed as modified.

---

1. Minn.Stat. § 609.245 (1984) provides, in part, "Whoever, while committing a robbery, is armed with a dangerous weapon or inflicts bodily harm upon another is guilty of aggravated robbery * * *."