STATE of Minnesota, Respondent,

v.

Jon David STARNES, Appellant.

No. C3–86–765.

Court of Appeals of Minnesota.

Nov. 25, 1986.

Hubert H. Humphrey, III, Atty. Gen., James B. Early, Sp. Asst. Atty. Gen., St. Paul, David W. Peterson, Lyon County Atty., Marshall, for respondent.

C. Paul Jones, Minnesota State Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and LANSING, and LESLIE, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

Jon David Starnes appeals from his conviction of aiding in the sale of a controlled substance, marijuana, in violation of Minn. Stat. §§ 152.09, subd. 1(1); 152.15, subd. 1(2); and 609.05, subd. 1. We affirm.

## FACTS

In the summer of 1983, BCA Agent Robert Bushman and other law enforcement officers began an undercover drug investigation in Lyon and the surrounding counties. At trial Bushman testified as to the events leading up to the arrest of Jon David Starnes as part of this operation.

In the course of his activities Bushman met Kyle Owen, who sold some marijuana to him. Following his deal with Owen, Bushman asked to meet other possible drug dealers. Owen referred Bushman to Starnes. Owen brought Bushman to Starnes' home in Marshall on August 31, 1984. Subsequent to his introduction Bushman proceeded to talk about marijuana. He asked whether Starnes could arrange a purchase. Although Starnes did not have any marijuana for sale himself, he did indicate he knew and came into contact with people who had drugs for sale. Bush-

man reported Starnes as saying he might be able to arrange a transaction through these people at a later date. Starnes testified that despite knowing Bushman wanted to use him as a pipeline to a drug source, Starnes gave him his home and work telephone numbers.

Bushman testified that on September 11, 1984 he telephoned Starnes and asked if there was any marijuana around available for sale. Starnes didn't know for sure. Bushman indicated he would be going to Marshall the next day and would then check with him. Upon arriving at Marshall on the 12th Bushman tried to contact Starnes at both his home and work numbers, but was unable to do so.

On September 25, 1984 Bushman again called Starnes and asked if he knew anyone who had marijuana for sale. Starnes replied that he had been at someone's house the previous evening and had seen the person who owned the house with a large quantity of marijuana. Yet, he also saw some of it distributed and did not now know how much was left. Bushman asked Starnes to check with the person having marijuana for the purpose of arranging a purchase once Bushman returned to town.

The next day, September 26, Bushman again arrived at Marshall. At approximately 6:00 p.m. he went to Starnes' residence. Once there he found Starnes getting ready to go hunting. Starnes testified, "If he would have been five minutes later I would have been bow hunting." Bushman stated that Starnes told him he would not be able to get any marijuana from the person he had mentioned before, but he did know of another person who had a quarter pound to sell. This was the same quantity that Bushman had previously expressed an interest in. Starnes identified this potential dealer as Merv Miller, the person with whom Starnes was about to go bow hunting. Bushman inquired as to the price and quantity of the marijuana. Starnes classified it as home grown costing about $325.00 for a quarter pound. Since Starnes was going over to Miller's house to

pick him up for bow hunting, he told Bushman to follow by car.

Bushman and Starnes arrived at Murray (Merv) Miller's apartment and went in. Starnes introduced Bushman to Miller. Starnes testified that Bushman asked Miller about purchasing some marijuana. Bushman testified that Miller went to a refrigerator and took out several plastic bags. Miller told Bushman each bag contained one ounce and four bags cost $325.00. Bushman made the purchase with Starnes present. The transaction took about five minutes. After the BCA investigation was concluded arrests were made. On September 26, 1985, exactly one year after the sale occurred, Starnes was arrested for aiding in the sale of a controlled substance.

Officer Paul Soppeland testified concerning Starnes' arrest. Soppeland interviewed Starnes. When asked whether he had ever sold marijuana before, Starnes replied, "Well, that is when I was foolish," and laughed. At trial Starnes explained that he meant the incident had occurred when he was a juvenile.

At trial Bushman also testified that although prior and subsequent attempts at arranging purchases of marijuana through Starnes had failed, the purchase made could not have occurred without the introduction Starnes provided. Miller, who pleaded guilty to sale of a controlled substance, confirmed that he would not normally have sold marijuana to a person whom he had known for only three minutes, but indicated that he sold to Bushman because of the way he was dressed and not because Starnes was present. Miller also testified that he had not made any prior arrangement with Starnes to sell anything to Bushman.

Starnes testified on his own behalf at trial. He stated that he had never sold marijuana in his life. Starnes explained that while he had never rejected Bushman's requests for aid in achieving a drug score, he never actually checked out such possibilities. Starnes stated the reason why he didn't rebuff Bushman: "I thought

he might be a friend or (was) going to be a friend * * * and I just didn't want to sound like a jerk." Starnes testified that he had not made any preparation for any drug buy between Bushman and Miller. He indicated that the day of the transaction he had planned on bow hunting and would have done so had Bushman not shown up. He did not receive any money, nor did he recall telling Bushman about the price of Miller's marijuana.

In addition to the testimony of Bushman, Starnes, Miller and Soppeland the state was allowed to introduce *Spreigl* evidence concerning two prior incidents. Through cross-examination the state was allowed to elicit evidence that marijuana and drug paraphernalia were found in Starnes' apartment on September 26, 1985 when he was arrested on the current charge. Also, the state introduced evidence regarding a March 10, 1981 incident in which Starnes sold marijuana to an informant. Starnes was adjudicated in juvenile court for this offense and received probation. Cautionary *Spreigl* instructions were given during trial, but not as part of the final charge to the jury.

The jury returned a verdict of guilty, and the trial court gave Starnes a two year stayed sentence with probationary conditions including 90 days incarceration, $200 fine, $20 surcharge and public defender reimbursement. Starnes appeals from his conviction and sentence.

### ISSUES

1. Was there sufficient evidence to support the conviction of appellant for aiding the sale of a controlled substance?

2. Did the trial court properly admit *Spreigl* evidence concerning appellant's conduct in two prior incidents?

3. Did the trial court properly reject appellant's special instruction on accomplice liability?

4. Did appellant receive a fair trial despite alleged errors of law in the state's closing argument?

5. Was appellant's sentence and stay of that sentence with probationary provisions within the trial court's discretion?

### ANALYSIS

1. In reviewing a claim of insufficiency of the evidence an appellate court is limited to ascertaining whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged. *State v. Turnipseed,* 297 N.W.2d 308, 313 (Minn.1980). The reviewing court cannot retry the facts but must view the evidence most favorably to the state and assume the jury believed the state's witnesses and disbelieved any contradictory evidence. *Id.* Pursuant to this mandate, we find there was sufficient evidence to support the jury's finding that appellant Starnes was guilty of aiding in the sale of a controlled substance.

Under Minn.Stat. § 609.05, subd. 1 (1984), a person may be convicted without actively participating in the overt act which constitutes the principle offense. *State v. Strimling,* 265 N.W.2d 423, 429 (Minn. 1978).

> Where the accused plays at least some knowing role in the commission of the crime and takes no steps to thwart its completion, the jury may properly infer the requisite mens rea for a conviction of aiding and abetting.

*Id.*

There was sufficient evidence for the jury to have made such a finding. There is evidence from which the jury could have inferred that Starnes had sought a drug salesman for Agent Bushman. Starnes gave Bushman his home and work phone numbers knowing that Bushman was seeking marijuana. He introduced Bushman to Miller. At that time Starnes knew Bushman wanted to buy marijuana and that Miller had some to sell. The two could not have come together without the intervention of Starnes. The fact that Starnes stood by and allowed the illegal transaction to take place is indicative of his role. In

fact, there is evidence from which the jury could have inferred that Starnes vouched for Bushman to enable the deal to take place.

2. Appellant argues the trial court erred in allowing *Spreigl* evidence concerning two prior incidents linking Starnes with marijuana possession and sales. The first incident happened over three years before the conduct upon which Starnes' present conviction is based occurred. On March 10, 1981 Starnes, who was then 17 years old, sold marijuana to an informant. He was adjudicated in juvenile court and received probation. Appellant claims this incident was too remote to have any relevance to the present case because the incident occurred years ago when Starnes was a juvenile. The second incident was a more recent occurrence. When Starnes was arrested on September 26, 1985 marijuana and marijuana paraphernalia were found in his apartment. Appellant asserts that this alleged *possession* of the small amount of marijuana that was found is not relevant to a charge of aiding in the *sale* of marijuana.

■ A fundamental principle in the law of evidence precludes the introduction of evidence of other crimes or bad acts committed by a defendant to prove that the defendant acted in conformity with this conduct. *State v. Johnson*, 256 N.W.2d 280, 286 (Minn.1977); Minn.R.Evid. 404(b). However, evidence of other crimes or bad acts are admissible to prove the current accusation when such evidence tends to establish a common scheme or plan embracing the commission of similar crimes so related to each other that proof of one or more of such acts tends to establish the current charge. *State v. Sweeney*, 180 Minn. 450, 455, 231 N.W. 225, 227 (1930). Admission of evidence of other acts is particularly appropriate where the defendant has raised the defense of entrapment and the state seeks to establish that the defendant was predisposed to commit the offense. *State v. Lynard*, 294 N.W.2d 322, 323–24 (Minn.1980).

The supreme court enunciated the appropriate standard for review of *Spreigl* is-

sues in the recent case of *State v. Doughman*, 384 N.W.2d 450 (Minn.1986):

> We will not reverse a trial court's admission of evidence of other crimes or bad acts unless an abuse of discretion is clearly shown. * * * However, we have noted that in order for such evidence to be admissible the trial court must determine that there is "clear and convincing" evidence that the defendant participated in the crimes or bad acts sought to be admitted. * * * The court must also determine that the evidence of prior crimes or bad acts is "relevant and material to the state's case." * * * In addition, it must rule that the probative value of the evidence outweighs any potential for "unfair prejudice."

*Id.* at 454. (citations omitted)

■ We find the trial court did not clearly abuse its discretion in admitting evidence of Starnes' 1981 sale and 1985 possession of marijuana. Appellant's reliance on an entrapment defense at trial put his predisposition to commit such a crime at issue. Both incidents are relevant to this question. Specifically, the 1981 sale of marijuana was not too remote in time to have such relevance. While it is true that one should not be branded as an adult by conduct committed while one is a child, the incident here occurred only three and one half years previously and concerned the same principle crime that Starnes is now charged with aiding. *See State v. DeGidio*, 261 N.W.2d 746 (Minn.1978) (admission of *Spreigl* evidence concerning incident that occurred almost two and one-half years earlier allowed). The 1985 incident involved possession of a small amount of marijuana and marijuana paraphernalia. Despite Starnes' claim that the contraband was his roommate's, the trial court could have properly found that clear and convincing evidence existed establishing that Starnes was the actual owner. Possession of even a small amount of marijuana is relevant to the predisposition to sell.

■ Appellant correctly states that when *Spreigl* evidence is admitted the trial court should give cautionary instructions to

the jury both at the time the evidence is presented and as part of the final charge. *State v. Billstrom*, 276 Minn. 174, 179, 149 N.W.2d 281, 285 (1967). It was error for the trial court to fail to give this necessary caution to the jury in its final instructions. Yet, appellant neglected to object at trial to this omission. Failure to request the cautionary instruction results in forfeiture of consideration of that issue on appeal. *Spears v. State*, 300 N.W.2d 173, 175 (Minn.1980). Additionally, appellant was not prejudiced by the lack of instruction in the last instance. The jury was properly cautioned when the evidence was first introduced. Given the brevity of the proceeding it seems unlikely that the jury would have failed to heed the trial court's initial admonition.

3. The trial court gave the following instruction on accomplice liability:

> A person is criminally liable for a crime committed by another if he intentionally aids, advises, hires, counsels or conspires with or otherwise procures the other to commit the crime. Liability for crimes of another. Defendant is guilty of a crime committed by another person when defendant has intentionally aided the other person in committing it, or has intentionally advised or hired or requested the other person to commit it. Defendant is guilty of a crime, however, only if the other person commits a crime.

The trial court instructions are from CRIM-JIG 4.01 and contain both exact quotation and paraphrase of Minn.Stat. § 609.05. As such the charge reasonably states the applicable law. It does not provide grounds for reversal.

4. Appellant claims that the state made errors of law in its closing argument that are so fundamental and prejudicial that appellant was deprived of a fair trial. Appellant claims the state's closing argument improperly instructed the jury to find accomplice liability without affirmative intentional conduct on the part of Starnes.

▆▆▆▆ Appellant has waived any objection to the state's closing argument by failing to raise the issue at trial. *See Spears v.*

*State*, 300 N.W.2d 173, 175 (Minn.1980). Thus, the issue should be reviewed only if it involves plain error affecting substantial rights. *See* Minn.R.Crim.P. 31.02. This is not the case here.

5. Appellant argues that his stayed sentence and probationary conditions are unjustifiably disproportionate. Miller, the principal actor in the sale of marijuana, received a stay of sentence with probationary conditions including 60 days in a county jail and restitution of $325. Appellant received a stayed sentence of two years with probationary conditions including 90 days local incarceration, $200 fine, $20 surcharge, and public defender reimbursement. Miller pleaded guilty, while appellant went to trial. Appellant claims he has been unfairly penalized for asserting his right to trial. Both initial sentences were made pursuant to the applicable sentencing guidelines.

▆▆▆▆ An appellate court will not generally review the trial court's exercise of its discretion in cases where the sentence imposed is within the presumptive range. *State v. Williams*, 337 N.W.2d 387, 391 (Minn.1983). This court can modify the sentence of an appealing defendant if such a modification appears to be in the interests of fairness and uniformity. *State v. Vazquez*, 330 N.W.2d 110, 112 (Minn.1983). Yet, fairness and uniformity involves more than comparing the sentences of principal and accomplice. *Id.* It involves comparing the sentence of the defendant with other offenders. *Id.* A defendant is not entitled to a reduction in his sentence merely because a co-defendant or accomplice has been convicted of a lesser offense or received a lesser sentence. *State v. Scott*, 375 N.W.2d 103, 105 (Minn.Ct.App.1985) *pet. for rev. denied*, (Minn. Dec. 19, 1985).

▆▆▆▆ Appellant's original sentence of two years, which was stayed, was made within the presumptive range of the sentencing guidelines. Although appellant's sentence seems incongruous, we find the trial court did not abuse its discretion in so ordering such a sentence. We note that

there is nothing more unequal than to treat unequal things equally. Thus we must assume, in the absence of contrary evidence, that the trial court had a proper basis to make the challenged delineation. Additionally, appellant's case is not one in which the sentence should be reduced in the interests of systemic uniformity and fairness. Appellant has made no such claim. Appellant rests his claim of disproportionality on the fact that the principal to the crime received lighter probationary requirements subsequent to a similarly stayed sentence. This alone does not justify modification of the trial court's sentence.

## DECISION

There was sufficient evidence to support appellant's conviction. The trial court properly admitted *Spreigl* evidence and properly rejected appellant's requested jury instructions on accomplice liability. The state's final argument did not contain errors of law depriving appellant of a fair trial. The trial court's sentence was not an abuse of discretion.

Affirmed.