*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A24-0539**

State of Minnesota,
Respondent,

vs.

Lashun Miller,
Appellant.

**Filed March 9, 2026**
**Affirmed**
**Schmidt, Judge**

Ramsey County District Court
File Nos. 62-CR-21-5220, 62-CR-22-1895

Keith Ellison, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Alexandra Meyer, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Lauermann, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Larson, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**SCHMIDT**, Judge

After appellant Lashun Miller appealed his first-degree-burglary and third-degree-assault convictions, he moved to stay the appeal to pursue postconviction relief. We granted his motion, remanded, and Miller filed a petition for postconviction relief seeking

to withdraw his guilty plea to first-degree burglary. The postconviction court held an evidentiary hearing and denied the petition. We reinstated Miller's appeal and now affirm.

## FACTS

Following a physical altercation between Miller and his wife, T.M., respondent State of Minnesota charged Miller with first-degree assault–great bodily harm. At Miller's first appearance, the district court issued a domestic-abuse no-contact order prohibiting Miller from contacting T.M. or going to her residence. While the no-contact order was still in effect, T.M. came home and found Miller in her apartment, where he assaulted her again. The state charged Miller with first-degree burglary–assault.

Miller pleaded guilty to first-degree burglary–assault and to an amended charge of third-degree assault. At the plea hearing, Miller and his attorney had this exchange:

> COUNSEL: Mr. Miller, I'm showing you a document entitled a Petition to Enter a Plea of Guilty in a Felony Case Pursuant to Rule 15. Did we go through this together before court?
>
> MILLER: Yes.
>
> COUNSEL: Did we go through it line by line?
>
> MILLER: Yes.
>
> COUNSEL: Do you believe that you understand everything in this document?
>
> MILLER: Yes.
>
> . . . .
>
> COUNSEL: Did we discuss possible strategies and defenses we might have?
>
> MILLER: Yes.

2

COUNSEL: And are you satisfied I fully represented your interests and advised you of these matters?

MILLER: Yes.

. . . .

COUNSEL: We discussed the plea agreement on the record before. Is anyone promising you anything outside of that agreement to get you to plead guilty?

MILLER: No.

COUNSEL: Is anyone forcing you in any way to plead guilty?

MILLER: No.

COUNSEL: You understand that to get the benefit of this agreement you would need to cooperate with the [pre-sentence investigation (PSI) report], remain law abiding, and return for your sentencing date?

MILLER: Yes.

COUNSEL: Otherwise the judge could, theoretically, choose to not even consider a dispositional departure?

MILLER: Do I understand?

COUNSEL: Yeah, do you understand that?

MILLER: Yes, yes.

. . . .

COUNSEL: At the bottom of this document is a signature; did you sign this?

MILLER: Yes.

Miller then pleaded guilty. The district court found that Miller provided an adequate factual basis, accepted his pleas, and adjudicated him guilty of both offenses.

3

At sentencing, Miller requested downward dispositional departures and argued that he was amenable to probation, treatment, or both. The state opposed a sentencing departure. Before announcing Miller's sentences, the district court explained:

> Well, I have to say that I have some serious public safety concerns given the level of these assaults as relaid [sic] in these complaints. The punching of the face, the pulling of the hair, the victim losing a tooth as a result of being punched in the face. Very similar behavior in the second case causing the victim to fall and breaking a chair in the kitchen, grabbing the victim by the throat, threatening to kill the victim, and then there's the issue of the knife, although that's not something you ever frankly admitted to.
>
> So I mean when I look at the alleged offenses you asked me not to look at your past, but I—I have to look at your past. I'm not giving you additional time because of your past, but I think it's necessary for me to review your past and make a decision based on what I believe will be in the public's interest and whether or not I believe you are amenable to probation.
>
> So I say that I do not find substantial and compelling reasons to depart from the guidelines based on the severity of these offenses and based on my belief that there hasn't been a showing that you will be amenable to probation.

The district court denied the motion for a departure and sentenced Miller to one year and one day in prison for the third-degree-assault conviction. The district court then sentenced Miller to 58 months in prison for the first-degree-burglary conviction and ordered that the sentences be served concurrently.

Miller filed a direct appeal. He then moved to stay the appeal and remand the case to allow him to pursue postconviction relief. We granted Miller's motion.

4

Miller then petitioned for postconviction relief, asserting that his plea to the first-degree-burglary charge was involuntary due to his attorney's alleged ineffective representation. The district court granted an evidentiary hearing on Miller's petition.

At the evidentiary hearing, Miller testified that his attorney said that he qualified for a downward dispositional departure and that there was a 95% chance that the district court would sentence him to probation. Miller's attorney testified that he explained the possible sentencing outcomes to Miller but made no guarantees about a sentence that was only probation without any prison time. Miller's attorney also testified that he informed Miller that he would be required to register as a predatory offender if he pleaded guilty.

Following the evidentiary hearing, Miller's postconviction counsel learned that the Minnesota Department of Corrections (DOC) was operating as though Miller was required to register as a predatory offender and had, therefore, directed him to complete sex-offense-specific programming. In a supplemental memorandum, Miller argued that his convictions did not require him to register as a predatory offender.

The postconviction court denied Miller's petition. The court found counsel's testimony to be credible and found that Miller's testimony was not credible. The court determined that Miller's first-degree-burglary plea was voluntary and that his counsel was not ineffective. The court declined to address the predatory-offender question, noting that any decision on the issue would be advisory because neither the DOC nor the Bureau of Criminal Apprehension (BCA) was a party in the case.

We granted Miller's motion to dissolve the stay and reinstated the appeal.

**DECISION**

I.      **The postconviction court did not abuse its discretion in denying the petition.**

Miller challenges the postconviction court's order denying his petition, which we review for an abuse of discretion. *Petersen v. State*, 937 N.W.2d 136, 139 (Minn. 2019). A court abuses its discretion when it bases "its ruling on an erroneous view of the law, or ma[kes] clearly erroneous factual findings." *Id.*

Miller argues that the postconviction court abused its discretion because the attorney's ineffective representation made Miller's plea involuntary. Miller also argues that the postconviction court erred in declining to address the question of whether he is required to register as a predatory offender. We address each argument in turn.

A.      **The postconviction court did not abuse its discretion by rejecting Miller's ineffective-assistance-of-counsel argument.**

Miller first argues that he should have been allowed to withdraw his plea because his attorney was ineffective in his representation. To succeed on a claim of ineffective assistance of counsel in the context of the attorney's representation for a guilty plea, the defendant must demonstrate (1) "'that counsel's representation fell below an objective standard of reasonableness'"; and (2) that "'there is a reasonable probability that, but for counsel's unprofessional errors,' . . . [the defendant] would not have pleaded guilty." *State v. Ecker*, 524 N.W.2d 712, 718 (Minn. 1994) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). If the defendant fails to satisfy one *Strickland* prong, we need not consider the other. *State v. Smith*, 932 N.W.2d 257, 271 (Minn. 2019).

An attorney meets the objective standard of reasonableness when they provide their client "with the representation of an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under the circumstances." *State v. Doppler*, 590 N.W.2d 627, 633 (Minn. 1999) (quotations omitted). We presume counsel's representation was reasonable. *Eason v. State*, 950 N.W.2d 258, 268 (Minn. 2020).

Miller argues his attorney was ineffective in three ways: (1) failing to obtain text messages that would negate an essential element of the offense, (2) failing to adequately communicate, and (3) advising that Miller would be sentenced to probation rather than prision. We agree with the postconviction court that none of Miller's allegations of ineffective assistance of counsel satisfy the first *Strickland* prong.

First, Miller's argument about investigating text messages is not persuasive. The record reflects that Miller's attorney explored the facts that Miller sought to prove with the text messages. After investigating the potential defense theory, counsel decided against trying to obtain the text messages from the victim's phone. We "will not review attacks on counsel's trial strategy," which includes "[t]he extent of counsel's investigation." *Opsahl v. State*, 677 N.W.2d 414, 421 (Minn. 2004).

Second, we disagree with Miller's arguments about his attorney's communication. Miller did not provide sufficient detail to support this allegation. And the postconviction court found that Miller's testimony was not credible. We defer to the postconviction court's credibility determinations. *See Bobo v. State*, 860 N.W.2d 681, 684 (Minn. 2015).

Third, the argument about Miller's attorney's statements about the possible sentence

7

is contrary to the record. At the plea hearing, Miller confirmed that he understood the plea petition, his plea was voluntary, and he was satisfied with his counsel's representation. He also agreed that the sentencing decision was for the district court. In addition, the postconviction court found that Miller's testimony was not credible and that his attorney's testimony was credible. Again, we must defer to those credibility findings. *See id.*

The postconviction court did not abuse its discretion in determining that Miller failed to establish the first *Strickland* prong. We need not address the second prong.

### B. The postconviction court did not err in declining to address Miller's argument about registering as a predatory offender.

Miller argues the postconviction court erred when it declined to address his predatory-offender argument. Despite the state's concession, we disagree.

A defendant's duty to register as a predatory offender is not part of their criminal sentence. *Taylor v. State*, 887 N.W.2d 821, 826 (Minn. 2016). Rather, registration is a civil, regulatory consequence. *Id.* The BCA maintains Minnesota's predatory-offender registry and imposes the duty to register. *See* Minn. Stat. § 243.166, subds. 2-4, 4c, 7a, 9 (2022). A district court may not impose or modify a defendant's duty to register. *See id.*, subd. 2. The proper procedure to seek judicial review of a BCA-imposed duty to register is a civil action against the BCA.[1] *See Bedeau v. Evans*, 926 N.W.2d 425 (Minn. App. 2019).

Thus, the postconviction court properly declined to rule on Miller's argument about

---

[1] A criminal appeal is proper, however, if a warrant of commitment erroneously states that a defendant is required to register as a predatory offender. *See, e.g.*, *State v. Randolph*, No. A25-0562, 2026 WL 264038, at *3 (Minn. App. Feb. 2, 2026).

whether he needed to register because the BCA and the DOC are not parties to this case.[2]

**II.    The district court did not abuse its discretion by denying Miller's request for a dispositional departure in his sentence.**

Miller argues that the district court abused its discretion when it denied his motion for a downward dispositional departure. We disagree.

We review a district court's sentencing decision for an abuse of discretion. *State v. Starnes*, 396 N.W.2d 676, 681 (Minn. App. 1986). Where the record shows that "the sentencing court carefully evaluated all the testimony and information presented before making a determination," we may not interfere with the court's exercise of discretion. *State v. Van Ruler*, 378 N.W.2d 77, 80-81 (Minn. App. 1985). We generally will not reverse a sentence when a district court imposes a sentence in the presumptive range as proscribed by the Minnesota Sentencing Guildelines. *Starnes*, 396 N.W.2d at 681.

The district court heard from defense counsel and Miller, reviewed the PSI report, and then provided detailed reasons for its decision to impose a presumptive sentence. The record shows that the district court exercised its discretion, "weigh[ed] reasons for and against departure," and "made a deliberate decision." *State v. Mendoza*, 638 N.W.2d 480, 484 (Minn. App. 2002), *rev. denied* (Minn. Apr. 16, 2002). The district court did not abuse its discretion when it denied Miller's motion for a downward dispositional departure.

**Affirmed.**

---

[2] We offer no opinion on the merits of Miller's argument about his duty to register.