**STATE of Minnesota, Respondent,**

v.

**John Samuel JOLLEY, Appellant.**

No. C9–92–1573.

Supreme Court of Minnesota.

Nov. 24, 1993.

John M. Stuart, State Public Defender and Cathryn Middlebrook, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., and Michael Richardson, Asst. County Atty., Minneapolis, for respondent.

KEITH, Chief Justice.

Defendant, John Samuel Jolley, appeals from judgment of conviction of first-degree murder claiming, inter alia, that the trial court's instructions to the jury on the defense of mental illness were inadequate. We affirm.

Defendant was an employee of a discount store in Northeast Minneapolis. On the afternoon of August 31, 1991, while working at the store, he spotted the victim, 8–year–old Margaret Marques, who had gone to the basement of the store to use the bathroom. Defendant, having long fantasized about kidnapping a woman or a girl, put his hand over the victim's mouth, unsuccessfully attempted to knock her out with a rubber mallet, then

carried her to a boiler room where he strangled her until she lost consciousness. He then placed her in a box and carried her out to his car. After telling a fellow employee that he was ill, he drove the victim to the house of his parents (his mother and stepfather), where he also lived. Knowing that his parents would not be home for some time, defendant undressed the victim, showered with her, and sexually assaulted her. He then put her back in the box and carried her to the basement. He stayed in the basement with her after his parents returned home. They apparently were unaware of the presence of the victim in the house.

The following day, after his parents left, defendant took the victim to the apartment of his brother, who was not home. That night, when the victim got up to use the bathroom, defendant put her in the bath tub and drowned her. After sexually assaulting her again, he removed her body from the apartment, disposed of her clothing in a dumpster near the apartment and disposed of the body in Lakeville in a wooded area near Highway I–35W.

Defendant subsequently confessed to the police and was thereafter charged by indictment with three counts of first-degree murder. Found competent to stand trial, defendant pleaded guilty to the elements of the offenses but demanded a jury trial on the issue of the defense of mental illness.

At the trial defendant claimed to be suffering from "multiple personality disorder," maintaining that an alter personality, "Jack," which resulted from being physically abused as a child by his father, controlled his actions and in fact committed the crimes.

Dr. Carl Malmquist, the court-appointed expert, was called by the defense. He diagnosed defendant as indeed having a "multiple personality disorder," a diagnosis he based on information received from defendant and on the manner in which defendant related the events. He testified that he believed

defendant knew the nature of his act and that it was wrong when he did it. He testified that defendant's behavior "raised questions" with respect to volition but that he did not see that volition was part of the legal question being asked. Asked by the prosecutor on cross-examination, "[I]s it your understanding of the insanity defense in Minnesota that it is cognition that is relevant and not volition," he was allowed to answer, over objection, "That's my understanding." Asked basically the same question on re-cross-examination, Dr. Malmquist said he would leave to the lawyers whether volition was relevant to the defense but that it was his understanding that it was not.

Dr. R. Owen Nelson, also testifying for the defense, agreed with Dr. Malmquist's diagnosis and with his opinion that defendant knew the nature of his act and that it was wrong when he committed the act. Asked whether in his opinion defendant was in volitional control at the time of his conduct, he said that he did not have an opinion "regarding anything that relates to the legal aspect of it * * * * "

Dr. William Percy, a psychologist specializing in "multiple personality disorder," testified for the state that, based on his review of the record, he did not believe defendant was suffering from the disorder. Agreeing with the others, he testified that defendant knew the nature of his act and that it was wrong at the time he committed it. With respect to volition, he testified that it was "very clear" that defendant was "in executive control" when he committed the act.

In closing arguments, the prosecutor argued that cognition was relevant but not volition. Defense counsel did not object or ask for a curative instruction.

■ Defense counsel did submit proposed jury instructions on the defense of mental illness. Those instructions included CRIMJIG 6.02,[1] the standard recommended jury

---

1. CRIMJIG 6.02 provides:
    Under the statutes of Minnesota, a person is not criminally liable for an act when, at the time of committing the act, the person did not know the nature of the act, or did not know that it was wrong because of a defect of reason

caused by a mental illness or deficiency. The defense of [mental illness or mental deficiency] is as follows:
    First, defendant did not know the nature of the act. This means, defendant did not understand what the defendant was doing. If be-

instruction, with the following language added:

> To decide whether defendant knew the nature of his act or to decide whether defendant understood that the act was wrong, you may give credence to all the evidence introduced that relates to cognition, volition, and capacity to control behavior.

The trial court refused to give the requested additional language.

CRIMJIG 6.02, which the trial court submitted, states the test for mental illness set forth in Minn.Stat. § 611.026, which is a codification of the so-called M'Naghten Rule in Minnesota. The M'Naghten Rule has been upheld by the United States Supreme Court against a due process claim. *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952).

Defendant argues, however, that the proposed addition to CRIMJIG 6.02 is consistent with state law, pointing out that the language in question is taken from this court's holding in *State v. Rawland*, 294 Minn. 17, 199 N.W.2d 774 (1972). In *Rawland* this court summarized its holding as follows:

> In determining whether or not a defendant has met the burden imposed on him by statute to prove absence of guilt because of insanity, the factfinder may give credence to competent evidence that relates to cognition, volition, and capacity to control behavior. The basic question of fact remains, however, whether in the light of this burden and this evidence the defendant was laboring under such a defect of reason as not to know "the nature of his act, or that it was wrong."

294 Minn. at 46, 199 N.W.2d at 790.

As the state points out, however, *Rawland* did not address or decide the question

whether instructions regarding volition or capacity to control behavior are required. Moreover, in *State v. Larson*, 281 N.W.2d 481, 486 including at n. 4 (Minn.), *cert. denied*, 444 U.S. 973, 100 S.Ct. 467, 62 L.Ed.2d 388 (1979), this court not only recommended using CRIMJIG 6.02, the instruction used here, but also stated, "We hold that an instruction on capacity to control behavior need not be given." Subsequently, in *State v. Carlson*, 328 N.W.2d 690, 694–95 (Minn. 1982), and in *State v. LaTourelle*, 343 N.W.2d 277, 283 (Minn.1984), we reaffirmed what we said in *Larson*.

The fact that the language proposed by defendant is taken from our decision in *Rawland* does not mean that the trial court was obligated to use the language in the instructions. As we have indicated on other occasions, a trial court is not obligated to give a proposed instruction simply because the instruction contains language taken from a decision of this court. *See, e.g., State v. Turnipseed*, 297 N.W.2d 308, 312 (Minn.1980) (not every sufficiency of the evidence test articulated by the supreme court should be read to the jury by the trial court in instructions).

Further, as we said recently in *State v. Olson*, 482 N.W.2d 212, 216 (Minn.1992), "as a general matter" it is the "wiser course" for trial courts to "avoid as much as possible the giving of instructions on particular kinds of evidence."

In conclusion, we reject the contention that trial courts, when requested, are obliged to include the language from *Rawland* concerning volition when instructing the jury on the M'Naghten Rule.

▮ We are troubled, however, by the prosecutor's statement in closing argument that the jury was not free to consider evi-

---

cause of a defect of reason, defendant did not know what action the defendant was taking or what the consequences of the defendant's action would be, then defendant did not know the nature of the act.

Second, even if defendant knew the nature of the act, the defendant did not understand that the act was wrong. [The word "wrong" is used in the moral sense and does not simply refer to a violation of a statute. Stated another way, even if defendant realized that the act

violated the law, defendant is not criminally liable if, because of a defect of reason, defendant did not understand that the act was morally wrong.]

Third, the failure of the defendant to know the nature of the act or that it was wrong, must have been the result of a defect of reason caused by [mental illness] [mental deficiency].

10 Minn.Dist. Judges Ass'n, *Minnesota Practice*, CRIMJIG 6.02 (3d ed. 1990).

dence as to volition in determining whether defendant met his burden of proof under M'Naghten. This statement was a misstatement of law. Any time a prosecutor makes such a misstatement of law, the defense is free to object and ask for a curative instruction.

Here if defense counsel had objected expressly to the prosecutor's statement and phrased the request for an instruction as a request for a curative instruction, the trial court may well have agreed to give the instruction requested or something else along the lines of the requested instruction. While we have no difficulty concluding that the trial court should have given a curative instruction correcting the prosecutor's misstatement, we disagree with any suggestion that the trial court's failure to give such an instruction constituted prejudicial error. As our brief summary of the evidence demonstrates, the evidence that defendant was mentally ill at the time he committed the act was very weak, and it is extremely unlikely that the giving of a curative instruction would have changed the result. Under the circumstances, we have no hesitancy in concluding that defendant is not entitled to a new trial on this ground.

Having carefully considered this contention and the other contentions raised by defendant, we affirm.

Affirmed.

WAHL, J., dissents in part and concurs in part and files opinion.

WAHL, Justice, dissenting in part, concurring in part.

I respectfully dissent from the holding of the majority opinion that the trial court, even when requested, is not obliged to include the language concerning volition from *State v. Rawland*, 294 Minn. 17, 199 N.W.2d 774 (1972), when instructing the jury on the defense of mental illness under Minn.Stat. § 611.026. The refusal of the trial court in this case to instruct the jury on the defense of mental illness as construed in *State v. Rawland* infringed on appellant's due process right to a fair trial and thwarted his due process right to present a complete defense.

U.S. Const., amend. V, XIV; Minn. Const., article 1, § 7.

In *Rawland,* this court held that

> In determining whether or not a defendant has met the burden imposed on him by statute to prove absence of guilt because of insanity, the factfinder may give credence to competent evidence that relates to cognition, volition, and capacity to control behavior.

*Id.* 199 N.W.2d at 790. At trial the defense had presented extensive evidence concerning appellant's mental illness. Both Dr. Carl Malmquist, the court appointed psychiatrist, and Dr. R. Owen Nelsen, the defense expert psychologist, diagnosed appellant as suffering from Multiple Personality Disorder under the DSM–III–R criteria. Though both testified that, in their opinion, at the time of the murder, appellant knew the nature of his act and that it was wrong, both also testified that volition was a critical aspect of their diagnosis of appellant from a medical or clinical view, and that appellant's behavior raised questions about the volitional end of his personalities and how he was functioning at the time of the offense. Because evidence of volition and capacity to control his behavior was the crux of his defense, appellant asked the court to add to CRIMJIG 6.02, the jury instruction on the Defense of Mental Illness or Mental Deficiency, the following language from *Rawland,*

> To decide whether defendant knew the nature of his act or to decide whether defendant understood that the act was wrong, you may give credence to all the evidence introduced that relates to cognition, volition, and capacity to control behavior.

The trial court gave Crim. JIG 6.02 but refused to give the requested additional instruction. I would hold the refusal to give such an instruction to be error.

The *Rawland* court recognized that when a defendant raises an insanity defense, "[t]he basic question of fact remains * * * whether in light of this burden [proof by a preponderance] and this evidence [that relates to cognition, volition, and capacity to control behavior] the defendant was laboring under such a

defect of reason as not to know 'the nature of his act or that it was wrong.'" 199 N.W.2d at 790. To say that the factfinder may consider competent evidence that relates to cognition, volition, and capacity to control behavior, however, and then not tell the jury they may consider such evidence is to make a nullity of *Rawland*. This is especially true in a case like this where the prosecutor misstated the law and told the jury that evidence of volition was irrelevant.

It is true that *Rawland*, a trial to the court, did not address the issue of whether instructions regarding volition or capacity to control behavior are required. The majority opinion, therefore, relies on three post-*Rawland* cases, *State v. Larson*, 281 N.W.2d 481 (Minn.1979), *State v. Carlson*, 328 N.W.2d 690 (Minn.1982), and *State v. LaTourelle*, 343 N.W.2d 277 (Minn.1984), to support its decision that an instruction on capacity to control behavior need not be given, but the cases are distinguishable. In *Larson*, there is no indication that the defendant requested an insanity instruction which was denied, rather he seems to have argued that *Rawland* altered the test for insanity in Minnesota. 281 N.W.2d at 486. In *Carlson*, the defendant requested that the trial court use the Model Penal Code instruction which mandated that the factfinder consider volition and capacity to control behavior. 328 N.W.2d at 694 n. 2. And in *LaTourelle*, the defendant requested that the jury be instructed that it should consider [rather than may consider] volition, cognition and capacity to control behavior in determining whether the defendant knew right from wrong and the nature of his act. 343 N.W.2d at 281. Appellant's proposed instructions, to the contrary, did not attempt to alter the M'Naghten test; did not suggest that the jury should or must consider volition evidence; and did not suggest that evidence of volition could be considered for any purpose other than to show that defendant did not know the nature of his act or that it was wrong. Rather the proposed instructions merely advised the jury that "you may give credence" to all the evidence relating to cognition, volition, and capacity to control behavior that had been introduced.

The trial court's refusal to give the proposed jury instructions is even more serious in light of the prosecutor's closing argument and the extensive testimony the prosecutor elicited from the expert witnesses to the effect that evidence of volition or capacity to control behavior was irrelevant to the legal test for insanity in Minnesota. The prosecutor told the jury that volition was irrelevant and that under the law they could not question appellant's ability to control himself. Based on this gross mischaracterization of the law, it is likely that the jury did not consider the evidence showing appellant lacked volition and did not have the capacity to control his behavior—evidence that was critical to appellant's defense. As the majority opinion seems to recognize, in light of the state's gross mischaracterization of the law, it was error for the trial court not to give a curative instruction sua sponte.

In a closer case, the trial court's failure to give the requested instruction and its failure to give a curative instruction might well be grounds for reversal and a new trial. In this case, however, where the expert testimony was unanimous that appellant knew the nature of his act and that it was wrong at the time he committed the offense, and where there was further evidence that appellant had been planning the perfect crime for over a year, I agree that the error is harmless.