**STATE of Minnesota, Respondent,**

v.

**Matthew James ESLER, Appellant.**

**No. C6–95–2405.**

Court of Appeals of Minnesota.

Aug. 20, 1996.

Review Denied Oct. 15, 1996.

Hubert H. Humphrey, III, Attorney General, St. Paul, for respondent.

Robert M.A. Johnson, Anoka County Attorney, Marcy S. Crain, Assistant County Attorney, Anoka County Government Center, Anoka, for respondent.

John M. Stuart, State Public Defender, Susan K. Maki, Assistant Public Defender, Minneapolis, for appellant.

Considered and decided by PARKER, P.J., and SHORT and FOLEY,* JJ.

## OPINION

PARKER, Judge.

Appellant Matthew James Esler, a 14–year–old, was indicted by a grand jury for

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

one count of first-degree murder, Minn.Stat. § 609.185(1) (1994). A jury found Esler not guilty of the first-degree murder charge, but found him guilty of the lesser included offense of second-degree murder in violation of Minn.Stat. § 609.19(1) (1994). The state moved for an upward durational departure from the sentencing guidelines. The motion was granted, and Esler was sentenced to 382 months incarceration. Esler was also ordered to pay restitution to a homeowner for damages he caused to the home in a separate criminal incident. We affirm in part and reverse in part.

## FACTS

This case arose from the shooting death of 23–year–old Dawn Haldorson. On September 9, 1993, Esler (then 14 years old) and several friends were "hanging out" at the home of Sandra Frederick. Frederick and the teens consumed large quantities of alcohol throughout the afternoon and into the evening. Unbeknownst to Frederick, Esler had, a few days prior to this visit, purchased a .38 caliber pistol from a friend.

During the course of the evening, Esler convinced Frederick to purchase some bullets for this pistol. After consuming more alcohol, Esler stood at the end of Frederick's driveway, aimed his loaded weapon at the house across the street, and fired off several rounds at the home. In the early morning hours of September 10, 1993, Esler consumed more alcohol and then went for a walk. A short distance away, he noticed a light on inside a home. Inside, Ms. Haldorson, who worked at the group home, was seated on the couch watching television. Esler peered through the window and took aim at her head; he fired, and Ms. Haldorson was killed by a single gunshot wound to her head.

Esler was certified as an adult and was tried as an adult. In imposing the upward durational departure, the trial court noted that the shooting took place while Ms. Haldorson sat in a place that could be considered her "home" and that Esler admitted that the victim "could have been anybody, just anybody at all." The trial court, terming Esler's behavior as "chilling," concluded that his con-

duct elevated the seriousness of the offense. He then sentenced Esler to 382 months incarceration instead of the presumptive 306–month sentence. In addition, based on damage done to a different home at which Esler had repeatedly fired his pistol earlier that day, the trial court ordered him to pay $2,000 restitution to the homeowner and the homeowner's insurance company.

On appeal, Esler alleges that (1) the circumstances of the offense for which he was convicted did not warrant an upward departure in sentencing; and (2) the trial court abused discretion by ordering the payment of restitution to the victim of an unrelated offense.

## ISSUES

I. Did the trial court abuse discretion by departing upward in sentencing?

II. Did the trial court abuse discretion by ordering Esler to pay restitution for damages Esler caused to a home in a separate criminal incident?

## DISCUSSION

The decision to depart from sentencing guidelines rests within the district court's discretion and will not be reversed absent a clear abuse of that discretion. * * * Upward departure is within the sentencing court's discretion only if "substantial and compelling" aggravating circumstances are present.

*State v. Davis,* 540 N.W.2d 88, 91 (Minn.App. 1995) (citing *State v. Garcia,* 302 N.W.2d 643, 647 (Minn.1981)), *review denied* (Minn. Jan. 31, 1996).

If the record supports findings that substantial and compelling circumstances exist, this court will not modify the departure unless it has a "strong feeling" that the sentence is disproportional to the offense.

*State v. Anderson,* 356 N.W.2d 453, 454 (Minn.App.1984).

■ Deciding whether a particular item of restitution fits within the statutory definition is a question of law and is fully reviewable by the appellate court. *In re Welfare of D.D.G.,*

532 N.W.2d 279, 280 (Minn.App.1995), *review denied* (Minn. Aug. 30, 1995).

## I.

Esler argues that the trial court abused discretion by departing upward from the sentencing guidelines. He contends that, although there were aggravating circumstances that would warrant an upward departure, there were other factors mitigating his culpability which would preclude or offset consideration of the aggravating factors. Esler claims that the trial court should have considered his age, 14 years at the time of the offense, as well as the influence and assistance he received from other individuals toward the commission of the crime. Esler argues that if the trial court had properly considered these mitigating factors, the court should have concluded that he was less culpable than a similarly situated adult and should not have imposed an upward sentencing departure.

■ The Minnesota Sentencing Guidelines provide a non-exclusive list of factors to be used in determining whether a departure is warranted. Minn. Sent. Guidelines Cmt. II. D.201; *State v. Peake,* 366 N.W.2d 299, 301 (Minn.1985). Invasion of a victim's zone of privacy, the home, and curtilage is an aggravating factor to consider for an upward departure. *State v. Hart,* 477 N.W.2d 732, 740 (Minn.App.1991), *review denied* (Minn. Jan. 16, 1992). In deciding whether to depart, the sentencing court must decide whether the defendant's conduct is more or less serious than that typically involved in the commission of the crime in question. *State v. Cox,* 343 N.W.2d 641, 643 (Minn.1984).

For all practical purposes, the trial court noted, the location where Haldorson was murdered could be considered her home.[1] Noting the similarity to *State v. Back,* 341 N.W.2d 273, 277 (Minn.1983), the trial court concluded that this factor was especially troubling because a person should be able to feel secure from outside harm when in the home. The other factor considered by the trial court to support an upward departure

was the randomness of the shooting. Because Esler had no relationship with the victim at all, the trial court concluded that this factor also served to elevate the seriousness of the offense. *See id.* (holding that an upward durational departure in sentencing was warranted where defendant Croft brandished a pistol and randomly shot and killed the victim on the front porch of her home). Adopting the language of *Back,* the trial court noted that " 'randomness' means without selection," which in this case made Esler's actions especially "chilling." The trial judge concluded that a durational departure was warranted and sentenced Esler to 382 months incarceration, an upward departure of 76 months.

■ On review of the record, we believe that the sentencing order was not an abuse of discretion. There is ample evidence to show that the trial court considered the appropriate mitigating and aggravating circumstances in determining the sentence. The victim was shot while in her "zone of privacy." Although she worked at the group home, the house was located in a residential neighborhood that created a "home-like" atmosphere. We agree also that the trial court's characterization of "randomness," as applied in this case, shows heightened, wanton conduct constituting a total disregard of human life.

We conclude that the location and randomness of the shooting were sufficiently substantial and compelling to justify a departure from the sentencing guidelines and observe that the presentence investigation report recommended an upward durational departure. We note that while Esler's age was considered at the reference hearing, because he was certified as an adult, it may be dubious to consider his age as a mitigating factor. *See State v. Kisch,* 346 N.W.2d 130 (Minn. 1984) (limited durational sentencing departure upheld where juvenile was certified as an adult for second-degree felony murder). Further, we cannot say that Esler's association with Frederick reduces his culpability.

---

1. The group home where she was working that night was located in a residential neighborhood. It was not recognizable as a group home. The trial court concluded that the shooter also probably thought it was her home.

Frederick's involvement was the subject of separate criminal proceedings, and she has been held criminally responsible for her actions. The evidence reveals that Esler was in no way a passive or controlled actor in this murder or in the events prior to it. We conclude, therefore, that the sentence was not disproportionate to the offense, and the trial court did not abuse discretion by imposing the upward durational departure.

## II.

Esler argues that the trial court abused discretion by ordering him to pay restitution to the homeowner and the homeowner's insurance company for damage he caused earlier that day when he shot at a house located near the group home. He contends this incident was separate and distinct from the shooting of Ms. Haldorson and therefore the homeowner and the homeowner's insurance company are not victims within the meaning of the Victim's Right Act, Minn.Stat. § 611A.01 (1994). Esler argues, therefore, that the restitution order should be vacated. The state concurs with Esler's argument.

■ "[O]nly the victim is entitled to receive restitution." *State v. Harwell*, 515 N.W.2d 105, 110 (Minn.App.1994), *review denied* (Minn. June 15, 1994). Under the statute, "victim" is defined as either a natural person or a corporation that incurs loss as a result of a crime. Minn.Stat. § 611A.01(b).

> [T]he word "restitution" connotes restoring or compensating the victim for his loss. If the legislature intended the term to be used more loosely, as a form of punitive damages, it should have used some other word or made its particular use of the word clearer.

*State v. Dillon*, 529 N.W.2d 387, 395, *rev'd on other grounds*, 532 N.W.2d 558 (Minn.1995). Any broader entitlement to restitution must be mandated by the legislature. *Id.* "[W]here the victim's losses are directly caused by [the defendant's] conduct *for which he was convicted* there is nothing improper in ordering restitution." *State v. Olson*, 381 N.W.2d 899, 901 (Minn.App.1986) (emphasis supplied).

■ We agree that Esler's argument comports with the law. In this instance, he was prosecuted for the murder of Ms. Haldorson and not for the earlier shooting into a nearby home. The Haldorson murder and the random "target practice" at the house nearby were separated by several hours and had different criminal objectives; therefore, they were not parts of the same behavioral incident. *See Bangert v. State*, 282 N.W.2d 540, 546 (Minn.1979) (factors to consider in determining whether multiple violations constitute a single behavioral incident are unity of time, place, and criminal objective). Although the homeowner was a "victim" of Esler's earlier "target practice" session, Esler was found not guilty of premeditated murder, which might have linked the two incidents into a single course of conduct. Thus, we cannot say that the homeowner was a "victim" of the Haldorson murder. We conclude, therefore, that the trial court abused discretion in ordering Esler to pay restitution to the homeowner and insurer for this separate behavioral incident.

## DECISION

We affirm the trial court's order sentencing Esler to 382 months incarceration. We reverse the trial court order directing Esler to pay restitution to the homeowner and the homeowner's insurance company.

**Affirmed in part and reversed in part.**