**STATE of Minnesota, Respondent,**

v.

**Jaimie Renee LATIMER, Appellant.**

**No. C3–99–1236.**

Court of Appeals of Minnesota.

Dec. 28, 1999.

Mike Hatch, Attorney General, St. Paul, MN; and John J. Muhar, Itasca County Attorney, Heidi M. Pertlicek, Assistant County Attorney, Grand Rapids, MN (for respondent).

John M. Stuart, State Public Defender, Leslie J. Rosenberg, Assistant Public Defender, Minneapolis, MN (for appellant).

Considered and decided by LANSING, Presiding Judge, SHUMAKER, Judge, and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

Appellant Jaimie Latimer alleges the trial court abused its discretion in sentencing her to pay restitution of $12,383.05. She claims the total monetary losses of the murder victim's parents were not directly caused by the conduct to which she pleaded guilty — accomplice after the fact to murder. We reverse and remand to the district court to determine which of the claimed restitution losses are a direct result of her actions as an accomplice after the fact.

## FACTS

On April 21, 1998, Latimer pleaded guilty to Minn.Stat. § 609.495, subd. 3 (1996), aiding an offender (accomplice after the fact). Latimer admitted to helping Bradley Yost dispose of some weapons used in the murder of William Booth. She told the court she drove her car out to the Tioga ore pit where Yost disposed of the weapons and Brandon Pinette burned a gun case and a towel.

Restitution was not mentioned during the discussion of Latimer's plea agreement. The state did not request it, and Latimer's plea agreement did not include a requirement that she pay restitution.

On May 19, 1999, the district court sentenced Latimer to a 36–month term of imprisonment and ordered her to pay $12,383.05 in restitution to William Booth's parents. The restitution was joint and several with four other individuals. The prosecutor argued that restitution was appropriate because the amount was "related to and arising out of the incident to which Ms. Latimer was the accomplice." The prosecutor also indicated he did not believe it would be appropriate to attempt to allocate those portions of the restitution claim that related solely to Latimer's actions.

In response, the defense explained that none of the parties had previously discussed or agreed to restitution. The defense also indicated that Latimer had not become involved in the charged incident until after the victim was murdered. The district court concluded that restitution was "appropriate for this crime," but made no specific findings as to why it was appropriate. This appeal followed.

## ISSUE

Is an "accomplice after the fact" to murder responsible for restitution for losses resulting from the murder?

## ANALYSIS

 "The trial court has broad discretion in imposing restitution." *State v. Olson*, 381 N.W.2d 899, 900 (Minn.App.1986) (citing *State v. Muller*, 358 N.W.2d 72, 76 (Minn.App.1984)). Whether a particular item of restitution fits within the statutory definition is a question of law reviewable

de novo by this court. *State v. Esler,* 553 N.W.2d 61, 63 (Minn.App.1996), *review denied* (Minn. Oct. 15, 1996).

A crime victim "has the right to receive restitution as part of the disposition of a criminal charge." *State v. Terpstra,* 546 N.W.2d 280, 282 (Minn.1996) (quoting Minn.Stat. § 611A.04, subd. 1 (1992)). "A request for restitution may include, but is not limited to, any out-of-pocket losses resulting from the crime." Minn.Stat. § 611A.04, subd. 1(a) (1996). In determining the amount of restitution to be ordered, the court shall consider "the amount of economic loss sustained by the victim as a result of the offense" and "the income, resources, and obligations of the defendant." Minn.Stat. § 611A.045, subd. 1 (Supp.1997). Restitution is only proper where the victim's losses are "directly caused" by the conduct for which the defendant was convicted. *Olson,* 381 N.W.2d at 901. The record must provide a factual basis for the restitution ordered. *State v. Fader,* 358 N.W.2d 42, 48 (Minn.1984).

In her appeal, Latimer argues that the district court abused its discretion in ordering restitution because Booth's parents' losses were not directly caused by Latimer's actions as an accessory after the fact. She contends that because she did not participate in the murder and was not charged as an accomplice, and the restitution was intended to compensate the parents for the murder of their son, "no legal basis existed for the court's restitution order."

Latimer analogizes her case to *Esler.* In *Esler,* the defendant was found guilty of second-degree murder after randomly shooting a victim who was sitting on the couch in a group home. 553 N.W.2d at 63. Several hours before the murder, Esler had fired shots at a neighbor's home, but he was not prosecuted for these actions. *Id.* at 65. At sentencing, the trial court ordered Esler to pay restitution to the homeowner and homeowner's insurance company for damage he caused to their home. *Id.* Esler appealed the restitution order, arguing the incident was separate from the murder, and, therefore, the homeowner and homeowner's insurance company were not victims within the meaning of the restitution statute. *Id.* This court agreed, and held that because the incidents were not a single course of conduct, the homeowner was not a victim of the murder. *Id.*

We agree that the instant case is analogous to *Esler.* In this case, Latimer's actions to cover up the murder are separate from the murder itself. Latimer was not present at and took no part in the murder. By the time Latimer committed her crime, the murder was complete. Thus, just as Esler could not be required to pay restitution for acts unrelated to the crime he was convicted of, Latimer should not be required to pay restitution intended to compensate Booth's parents for his murder.

Nevertheless, we conclude restitution is appropriate for any losses Booth's parents experienced as a result of Latimer's actions to cover up the murder. The filing by the Crime Victim's Reparations Board and Norman Booth's request for restitution indicate restitution was requested for funeral expenses, counseling, wage loss, mileage, and meals. Other than the funeral expenses, these documents do not indicate which requests were related to the murder and which were related to the Booth family's multiple-day search for their son. We, therefore, remand this case to the district court to determine which losses were directly caused by Latimer's participation in the cover-up of the murder. *See State v. Keehn,* 554 N.W.2d 405, 407–08 (Minn.App.1996) (remanding case where victim seeking restitution failed to describe with reasonable specificity nature and amount of losses), *review denied* (Minn. Dec. 17, 1996).

**DECISION**

The district court abused its discretion in ordering Latimer to pay restitution to

Booth's parents for losses that were not directly caused by her actions as an accessory after the fact and by failing to allocate the portion of the restitution claim that related solely to Latimer's actions.

**Reversed and remanded.**