STATE of Minnesota, Respondent,

v.

Tze THAO, Appellant.

No. C1–00–2022.

Court of Appeals of Minnesota.

Oct. 16, 2001.

Mike Hatch, Attorney General and Susan Gaertner, Ramsey County Attorney, Darrell C. Hill, Assistant County Attorney, St. Paul, for respondent.

John M. Stuart, State Public Defender, Susan K. Maki, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by SCHUMACHER, Presiding Judge, SHUMAKER, Judge, and LINDBERG, Judge.*

## OPINION

GORDON W. SHUMAKER, Judge.

A jury found appellant Tze Thao guilty of two counts of second-degree murder relating to a drive-by shooting for the benefit of a gang. The district court imposed a sentence that was an upward durational departure from the sentencing guidelines.

Arguing that the evidence was insufficient to support the verdict because of inconsistencies in the testimony; that the court had no proper basis for departing from the sentencing guidelines; and that the prosecutor misstated the law in his final argument, Thao appealed.

Because the evidence was sufficient to support the convictions, there were substantial and compelling circumstances to warrant a durational departure from the sentencing guidelines, and the prosecutor did not misstate the law, we affirm.

## FACTS

Zoo Chuyangheu and several friends were playing basketball during the daytime on one of two basketball courts located in Edgerton Park, a public park and playground in Maplewood.

Two vehicles occupied by several young men and women entered the park along a road adjacent to the basketball courts. The occupants of the vehicles had planned to play basketball, but both courts were in use. The lead vehicle, a Jeep, made a U-turn and left the park. The second, a Toyota Corolla, also made a U-turn, but it then stopped near the court on which Chuyangheu and his friends were playing.

Someone in the car called out to the basketball players, "What you bang?," an inquiry as to what gang the players were in. The game halted and someone in the car asked if anyone belonged to the "O.L.'s," an Asian gang known as the Oriental Loks, and then said that he knew the players were O.L.'s. Next, someone in the car pointed a handgun out the window and shot eight times into the group of players. A bullet struck Chuyangheu in the back and he later died from internal bleeding.

On evidence that Tze Thao was the driver of the Toyota and was the shooter, the grand jury indicted him on charges of first-degree murder, second-degree murder while committing a drive-by shooting, and second-degree murder for the benefit of a gang. He pleaded not guilty and the case proceeded to a jury trial.

There were several witnesses to the shooting, both in the Toyota and on the playground. Although some of the testimony was in conflict as to the identity of the shooter, some witnesses on the basketball court and in the Toyota testified that the driver fired the shots and that Thao was the driver. An occupant of the Jeep stated that Thao admitted shooting at the group playing basketball.

St. Paul police officer Richard Straka, a member of the gang strike force, testified that he had known Thao for about four or five years and that Thao regularly associated with a Hmong gang known as the White Tigers. Straka explained that Thao had been photographed with the White Tigers while using "gang signs," and that a

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

reliable source had also identified Thao as a gang member. Finally, Straka stated that the White Tigers had committed similar drive-by shootings in the past.

During his final argument, the prosecutor, referring to the elements of a "drive-by shooting," said:

> I'm not going to go over all of the elements. A lot of them are very self-explanatory, and as you will see, there are—it came in uncontradicted. For instance, that it was a drive-by shooting. Well, what do you need for a drive-by shooting? All you need is somebody was in a car and shot. The testimony is clear on those matters.

Thao did not object to this argument. At the end of the final arguments, the court instructed on all of the elements of the crimes charged. The jury found Thao not guilty of first-degree murder and guilty of second-degree murder while committing a drive-by shooting and second-degree murder while committing a drive-by shooting for the benefit of a gang.

The presumptive sentence for the latter conviction, the more serious of the two crimes, is 318 months, executed. The court departed durationally from the sentence and imposed a term of 477 months. Challenging the sufficiency of the evidence to sustain his convictions and the court's departure from the sentencing guidelines, and alleging prosecutorial misconduct, Thao appeals.

## ISSUES

1. Several people witnessed a drive-by shooting. Although there were inconsistencies in the testimony as to the precise physical description of the assailant, some witnesses identified the appellant as the shooter. Do the inconsistencies render the guilty verdict unsupported by sufficient evidence?

2. A gang member in a car fired eight shots from a handgun into a group of strangers playing basketball during the daytime on a public playground. The players neither did nor said anything to motivate the shooting; rather the act was premised on the shooter's speculation that the players belonged to another gang. Do these facts present substantial and compelling circumstances for an upward durational departure from the sentencing guidelines?

3. In his final argument, the prosecutor discussed only two of the several elements of the crime of drive-by shooting, saying that the other elements were self-explanatory. Did the prosecutor commit prosecutorial misconduct by misstating the law?

## ANALYSIS

### 1. Sufficiency of the evidence

 Thao argues that inconsistencies regarding the identity of the shooter give rise to "grave concerns" as to his guilt, and those concerns render the evidence insufficient to convict him. In considering a claim of insufficient evidence, this court's review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict that they did. *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989). The reviewing court must assume the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989). The reviewing court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *State v. Alton,* 432 N.W.2d 754, 756 (Minn.1988). Inconsistencies in the state's case do not

require reversal if the testimony taken as a whole is consistent and credible. *State v. Folkers*, 562 N.W.2d 5, 9 (Minn.App. 1997). A conviction can rest on the testimony of a single witness, and it is the jury that determines the weight and credibility to be assigned to the testimony of individual witnesses. *State v. Miles*, 585 N.W.2d 368, 373 (Minn.1998).

Our independent review of the trial transcript convinces us that, although there were testimonial conflicts regarding details of the shooting and the precise identity of the shooter, there was consistent testimony that the driver of the Toyota asked the players on the basketball court if anyone was involved with a rival gang, and then the driver pulled out a gun and started shooting at those players. Additional consistent testimony identified Thao as the driver, even if some of the witnesses were incorrect as to Thao's physical description.

■ Thao argues that the gang members agreed to blame him for the crime after the police made it clear to them that they already believed Thao committed the crime and that they would not get into trouble if they supported that belief. The credibility of the evidence is to be determined by the trier of fact. *See* DeMars v. State, 352 N.W.2d 13, 16 (Minn.1984) (stating "[t]he credibility of the witnesses and the weight to be given their testimony are determinations to be made by the factfinder"). Here, despite some minor inconsistencies, there is clear, consistent, and credible evidence sufficient to support Thao's convictions.

### 2. *Upward departure in sentencing*

■ Thao argues that the district court erred in giving him a 50% upward durational departure from the presumptive sentence because there were no aggravating circumstances in this case warranting such a departure. The Minnesota Sentencing Guidelines state that "[the district court] judge shall utilize the presumptive sentence provided in the sentencing guidelines unless the individual case involved substantial and compelling circumstances." Minn. Sent. Guidelines II.D. In the presence of aggravating or mitigating circumstances, the district court has broad discretion to depart from the presumptive sentence under the guidelines, and will not be overturned absent clear abuse of that discretion. *State v. Behl*, 573 N.W.2d 711, 714 (Minn.App.1998), *review denied* (Minn. Mar. 19, 1998).

■ If the record supports the district court's findings that substantial and compelling circumstances exist, we will not modify the departure unless we have a "strong feeling" that the sentence is disproportional to the offense. *State v. Esler*, 553 N.W.2d 61, 63 (Minn.App.1996), *review denied* (Minn. Oct. 15, 1996). In deciding whether to depart durationally, the sentencing court must decide whether the defendant's conduct is more or less serious than that typically involved in the commission of the crime in question. *Id.* at 64.

Before challenging the departure, Thao argues that the presumptive sentence was incorrectly calculated. He contends that the sentence for second-degree drive-by murder is 306 months and that the court improperly stated the presumptive sentence as 318 months.

Although Thao is correct as to the sentence for the principal substantive crime, he fails to acknowledge that the conviction was for second-degree drive-by murder *for the benefit of a gang*. Where the sentence is for the benefit of a gang, the sentencing guidelines require the addition of time as may be appropriate, depending on the offender's criminal history score. Minn. Sent. Guidelines II.G. Thao's history score is zero. The guidelines require 12 months

to be added to the presumptive 306 months. *Id.* The district court correctly recited the presumptive sentence as 318 months.

The district court's upward durational departure for a drive-by murder committed for the benefit of a gang presents an issue of first impression in Minnesota.

The presumptive sentences in the Minnesota Sentencing Guidelines are presumed to be appropriate unless the court gives reasons that

> specify the substantial and compelling nature of the circumstances * * * which demonstrate why the sentence selected in the departure is more appropriate, reasonable, or equitable than the presumptive sentence.

Minn. Sent. Guidelines II.D.

To support its departure, the court explained the substantial and compelling circumstances that made the crime more serious than the typical drive-by shooting and that made a longer period of incarceration more appropriate than that prescribed by the guidelines. The shooting occurred at a public playground next to a school. The court noted that a playground is a place in which people are likely to feel safe, a fact that makes people using the playground particularly vulnerable. There were ten people on the basketball courts and there were other people in other playground areas. All were strangers to Thao. Thao fired eight shots randomly into the basketball court, aiming at no particular person. These facts show substantial and compelling circumstances that make a departure more appropriate than the presumptive sentence.

The uniqueness of the location of a crime has been recognized as a proper factor on which to rely in a sentencing departure. *See State v. Murphy*, 545 N.W.2d 909, 917 (Minn.1996) (upward departure supported in part by the fact that the crime was committed in victims' homes, resulting in "an invasion of privacy and security"); *Behl*, 573 N.W.2d at 714 (stating that crimes that occur in the victim's zone of privacy, such as the victim's bedroom, is an approved factor to consider in a departure). Although we do not equate a public playground with a crime victim's home, we agree with the district court that a playground is generally thought of as a place of recreation and relaxation, a place where people need not take any special protective or precautionary measures. Furthermore, a playground is ordinarily an open area, widely visible to users and passersby, a fact that might lead users to feel that criminals, who almost invariably desire to escape undetected, are not likely to commit crimes there. That geography can trigger particular emotional and mental states in people is common knowledge. Just as the dark alley might conjure fear and apprehension, a playground occupied by several people during daylight has an inviting quality and seems to offer a reasonably safe place to enjoy leisure time. Although it is not a zone of privacy, it is uniquely held out to the public as a zone of tranquility. The fact that crimes are sometimes committed on playgrounds and that there is no guarantee of safety and tranquility does not alter our view. Crimes are also committed in locked homes. Crimes can be committed anywhere. What is controlling is the victim's reasonable expectation that this is a place where the likelihood of crime is diminished and where safety is the norm.

The district court also noted that Thao fired eight shots in the direction of the people on the basketball court. The randomness of the shooting, the number of shots fired, and the tenuous motivation for the crime make this drive-by shooting atypical. From general knowledge of gang-related drive-by shootings, we are

reasonably led to view these crimes as typically involving acts of revenge for some betrayal or disrespect of the gang and that are directed at a particular person.

Here, Thao impulsively speculated that the basketball players, or some of them, were members of another gang. The players neither did nor said anything to warrant that conclusion, nor were they dressed in gang attire. There was no evidence that Thao was in a dispute with the gang he assumed the players to be part of. For no reason other than his surmise, and without any suggestion that all of the players might have been gang members, Thao just shot indiscriminately into the crowd. This put not only Chuyangheu but all the other players in jeopardy. *See State v. Anderson*, 463 N.W.2d 551, 553 (Minn.App.1990) (putting a large number of people in jeopardy is a factor supporting a sentencing departure), *review denied* (Minn. Jan. 14, 1991).

Considering all the circumstances of this case, we conclude that the district court properly departed from the presumptive sentence.

3. *Misstatements of law during closing arguments*

 In his pro se brief, Thao argues that the prosecutor committed misconduct during closing arguments by misstating the statutory elements of drive-by shooting crime, thus denying his right to a fair trial. Prosecutorial misstatements of the law may be the basis for a defense objection. *State v. Jolley*, 508 N.W.2d 770, 773 (Minn.1993). However, the proper remedy for misstatements of the law is a curative instruction, and not necessarily a new trial. *Id.* (finding that whenever a prosecutor makes a misstatement of the law, the defense is free to object and ask for a curative instruction; a new trial may be warranted if there is a showing of prejudicial error due to the misstatement of law and failure to provide a curative instruction).

The record reveals that the prosecutor stated that he would not cover all the elements in his argument because some of them were "self-explanatory." He then discussed only two of the elements of the charged crimes. He did not represent to the jury that these were the only elements that had to be proved. Thus, he did not misstate the law.

After the closing arguments, the district court appropriately instructed the jury on all the elements that had to be proved to return a guilty verdict. There was no prosecutorial misconduct, and the jury received clear, proper instructions on the law.

## DECISION

Despite minor inconsistencies in the witnesses' testimony, the evidence was sufficient to support the jury's guilty verdict, there were substantial and compelling reasons supporting the district court's decision to durationally depart from the presumptive sentence, and appellant did not suffer from any prejudicial error because the prosecutor did not misstate the law during closing arguments. Furthermore, if there were any misstatement, the district court properly cured any error through its jury instructions.

**Affirmed.**