# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-0940

State of Minnesota,
Respondent,

vs.

Javier Rodriguez,
Appellant

**Filed May 11, 2015**
**Affirmed**
**Worke, Judge**

Rice County District Court
File No. 66-CR-13-1716

Lori Swanson, Attorney General, St. Paul, Minnesota; and

G. Paul Beaumaster, Rice County Attorney, Terence J. Swihart, Assistant County Attorney, Faribault, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Worke, Judge; and Harten, Judge.[*]

## S Y L L A B U S

I.      When the predicate offense for second-degree burglary is criminal damage to property, the entry of any part of the offender's body into the premises satisfies the statutory requirement that the offender committed a crime while in the building.

---

[*]Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

II.    Monetary losses, including moving expenses, directly linked to psychological trauma caused by an offender's criminal acts are compensable and within a district court's broad discretion to include in a restitution award.

**O P I N I O N**

**WORKE**, Judge

Appellant challenges his second-degree burglary conviction, arguing that the evidence fails to show that he committed the predicate offense of criminal damage to property within the building.  He also argues that the district court abused its discretion by ordering restitution for moving expenses because the loss was not caused by him.  We affirm.

**FACTS**

In the early morning hours of July 4, 2013, appellant Javier Rodriguez consumed alcoholic beverages and decided to visit a couple of his friends.  Rodriguez went to V.M.'s home where his friend, R.M., lived.  Rodriquez tried to open the porch door.  When the door did not open, Rodriquez reached his finger through a small hole in a screen and made the hole larger to reach his hand in and unlock the door.

Around 3:24 a.m., Rodriquez called H.B., who did not answer her phone.  Rodriquez walked to H.B.'s home, about a block away from V.M.'s home.  H.B.'s parents, M.T. and R.T., had recently arrived home.  M.T. went to bed upstairs; R.T. had fallen asleep on the couch downstairs.  M.T. heard someone walking around, but assumed that it was R.T.  When the noise persisted, M.T. went downstairs to find R.T. sleeping on the couch.  M.T. went back to bed, but within five minutes, she opened her eyes to view a

2

man standing over her and grabbing her. M.T. screamed, jumped out of bed, and pushed the man out the window.

R.T. ran outside and saw Rodriguez, whom he recognized from H.B.'s school. Rodriguez joined R.T. and was present when police officers arrived. On the ground below the second-story window that M.T. had pushed the trespasser through, an officer found a pair of bent eyeglasses. Rodriguez asked officers what they were going to do with the glasses. Officers observed that Rodriguez's eyes were bloodshot and watery and he was emitting a strong odor of an alcoholic beverage.

Rodriguez admitted to officers that he tried to open a window at M.T. and R.T.'s home. When he could not open the window on the ground floor, he climbed on the roof to open the second-story window. Rodriquez lost his glasses when he fell out of the window. Rodriquez stated that he was drunk and that when he is drunk he does not think.

A jury found Rodriguez guilty of trespass on M.T. and R.T.'s home, second-degree burglary of V.M.'s home, and consumption of liquor by a person under the age of 21.

At the hearing on restitution, M.T. testified that after the break-in, because she was unable to live in the house, the family moved the next month. She stated that she kept thinking that Rodriguez was hiding upstairs, and she was terrified to go into her bedroom. M.T. testified that she is not scared of Rodriguez, but is scared of the "figure of somebody standing over [her] being in [her] house . . . hiding in different places in [her] house where [she] didn't know they were." The district court ordered Rodriguez to pay

$1,119 in restitution for the cost of a moving van, first month's rent, and R.T.'s lost wages. This appeal follows.

## ISSUES

I.     Was the evidence sufficient to sustain appellant's second-degree burglary conviction when the predicate offense of criminal damage to property occurred either before or simultaneous to appellant's entry into the building?

II.     Did the district court abuse its discretion by awarding restitution for moving expenses?

## ANALYSIS

### I.  Sufficiency of the evidence

Rodriguez first argues that the evidence was insufficient to show that he committed second-degree burglary. In reviewing a claim of insufficient evidence, this court reviews the record to determine whether the evidence, when viewed in the light most favorable to the verdict, is sufficient to allow the jury to reach its verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). This court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

Rodriguez claims that the predicate offense of criminal damage to property occurred before he entered V.M.'s house; thus, according to the plain language of the burglary statute, he did not commit a crime while inside the building. Statutory interpretation is an issue of law reviewed de novo. *State v. Misquadace*, 644 N.W.2d 65, 68 (Minn. 2002). In construing statutory language, words and phrases are given their common and approved usage. Minn. Stat. § 645.08(1) (2012) "The object of all

4

interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2012).

An individual commits second-degree burglary when he "enters a building without consent and with intent to commit a crime, or enters a building without consent and commits a crime while in the building." Minn. Stat. § 609.582, subd. 2(a) (2012). Here, Rodriguez was found guilty of entering a building without consent and committing a crime while in the building. He claims, however, that he did not commit a crime while in the building because the predicate crime—criminal damage to property, tearing the screen—was committed before or as he entered the building not while he was inside.

Rodriguez argues that *Munger v. State*, the only published case addressing the issue, does not apply here. 749 N.W.2d 335 (Minn. 2008). In *Munger*, the defendant pleaded guilty to first-degree burglary, admitting that he reached his hand into the open window of a ground-level apartment and moved the curtain for the purpose of being able to look in and invade the resident's privacy. *Id.* at 337. Munger sought to withdraw his guilty plea, claiming that the burglary statute requires intent to commit a crime within the building, but his peeping in a window occurred outside the building. *Id.* The supreme court determined that the statute did not require that the intent to commit a crime be intent to commit a crime within the building. *Id.* at 339.

Rodriguez claims that *Munger* is not controlling because it deals with the first way in which a person can violate the statute: entering a building without consent and *with intent to commit a crime*. *See* Minn. Stat. § 609.582, subd. 2(a) (emphasis added). Rodriguez was found guilty of committing the offense in the second way proscribed:

5

entering a building without consent and *committing a crime while in the building*. *See id.* (emphasis added). While Rodriguez is correct that *Munger* addressed interpretation of the first clause in the statute, there are unpublished cases from this court supporting Rodriguez's conviction of the second clause.

In *State v. Pawliszko*, the defendant argued that the predicate offense of the burglary charge was criminal damage to property caused during entry, not while in the building. No. A08-1399, 2009 WL 3255269, at *3 (Minn. App. Oct. 13, 2009), *review denied* (Minn. Dec. 23, 2009). The defendant drove his truck through the victim's garage door attached to her house in order to gain entry. *Id.* at *2. The district court had instructed the jury that the element of committing a crime while in the building could be met by proof that the defendant damaged the victim's house or the victim's vehicle that was in the garage. *Id.* at *3. Relying on *Munger*, this court concluded that the burglary statute does not require that the intent be to commit a crime within the building. *Id.* at *4.

Rodriguez claims that *Pawliszko* is distinguishable because the damage to property in *Pawliszko* continued after the defendant entered the garage. Rodriguez claims that the damage he caused to the screen was completed before he entered V.M.'s home. But in *Pawliszko*, this court concluded that the district court properly instructed the jury that the defendant damaged either the victim's garage door *or* the victim's vehicle in the garage. *Id.* at *3-4. And similar to the defendant in *Pawliszko* causing damage by driving his truck through the garage door to gain entry to the victim's house, Rodriguez caused damage to the screen to gain entry to V.M.'s house. *See id.* at *2.

Even more similar to the facts here is *State v. Tellinghuisen*, in which the defendant argued that the evidence was insufficient to convict him of burglary because the state failed to prove that he committed criminal damage to property "while in the building." No. CX-97-1200, 1998 WL 249029, at *2 (Minn. App. May 19, 1998), *review denied* (Minn. July 16, 1998). In *Tellinghuisen*, the defendant admitted that he broke a screen and a planter as he entered through a window of the victim's apartment. *Id.* He argued, however, that he damaged the screen and planter prior to or incident to his entry and therefore not while in the building. *Id.* This court determined that the defendant broke either item "while either his hand or leg or any other part of his body was inside the apartment," which was sufficient to constitute committing a crime "while in the building." *Id.*

Rodriguez claims that *Tellinghuisen* is distinguishable because Tellinghuisen committed additional damage to the property once he was inside the apartment. Rodriquez is incorrect. Tellinghuisen admitted that he broke a screen and a planter *as he entered* through a window. *Id.* There is no additional fact in *Tellinghuisen* that damage occurred once he was in the apartment. The damage occurred while he entered the apartment, which this court determined satisfied the statute as occurring while in the building because at least part of his body was inside the apartment. *Id.*

The court in *Tellinghuisen* relied on *State v. Nelson*, in which the defendant argued that the evidence failed to show that he sufficiently entered the building because he stepped through a window with one leg and put one or two feet on the desk inside. 363 N.W.2d 81, 83 (Minn. App. 1985). This court concluded that there was sufficient proof

7

that Nelson entered the building because "[e]ntry is almost universally defined as the intrusion of *any part of the offender's body* into the premises." *Id.* (emphasis added).

Rodriquez committed damage to property when he put his finger through the hole in the screen and made the hole larger in order to gain entry into V.M.'s home. Rodriguez was considered "in the building" when his finger entered the premises. *See* Minn. Stat. § 609.582, subd. 2(a); *see also Nelson*, 363 N.W.2d at 83 (entry occurs when any part of the body intrudes into the premises). In the instant case, we conclude that the evidence was sufficient to show that Rodriquez committed second-degree burglary because he entered V.M.'s home without consent and committed criminal damage to property while in the building because the damage occurred when at least part of his body was in the building.

## II.    Restitution

Rodriguez argues that the district court abused its discretion by ordering him to pay restitution for moving expenses, claiming that moving expenses were not directly caused by his actions.

"A crime victim has the right to receive restitution as part of the disposition of a criminal charge." *State v. Latimer*, 604 N.W.2d 103, 105 (Minn. App. 1999) (quotation omitted); Minn. Stat. § 611A.04, subd. 1(a) (2012) (stating that a district court may order a criminal to pay his victim restitution). District courts have broad discretion in awarding restitution. *State v. Tenerelli*, 598 N.W.2d 668, 671 (Minn. 1999). But whether an item meets the restitution statute's requirements is a legal question reviewed de novo. *State v. Ramsay*, 789 N.W.2d 513, 517 (Minn. App. 2010).

8

"A request for restitution may include, but is not limited to, any out-of-pocket losses resulting from the crime, including medical and therapy costs [and] replacement of wages and services . . . ." Minn. Stat. § 611A.04, subd. 1(a). But the victim's losses must be "directly caused by the conduct for which the defendant was convicted." *Latimer*, 604 N.W.2d at 105 (quotation omitted). A district court must determine whether "a restitution claim . . . [is] so attenuated in its cause that it cannot be said to result from the defendant's criminal act." *See State v. Palubicki*, 727 N.W.2d 662, 667 (Minn. 2007) (declining to adopt broad test that restitution may be recovered for any loss that would not have occurred "but for" the commission of the crime for fear of expanding a restitution award beyond the statutory provision). Thus, a restitution award must be supported by facts on the record. *State v. Johnson*, 851 N.W.2d 60, 65 (Minn. 2014). And the state bears the burden of proving by a preponderance of the evidence the amount of the victim's loss resulting from the offense and the propriety of the restitution award. Minn. Stat. § 611A.045, subd. 3(a) (2012); *Johnson*, 851 N.W.2d at 65.

In *State v. Bell*, this court held that a crime victim's moving expenses were compensable items of restitution because the assailant caused "such psychological trauma that [the victim] had to move from her home." No. A12-1060, 2013 WL 599366, at *2-3 (Minn. App. Feb. 19, 2013), *review denied* (Minn. Apr. 30, 2013). This court noted, however, that "not every crime would result in the need for the victim to move residences, [but] the particular facts of this case establish a direct link between the crime and the victim's need to move." *Id.* at *2.

In *Bell*, the assailant sexually assaulted the victim in her home while her young child slept in another room, and threatened to return and kill her if she told anyone. *Id.* at *1. The next night, an intruder who matched the assailant's description attempted to enter the victim's home. *Id.* The assailant was not apprehended until two years later. *Id.* at *2. In concluding that the victim was entitled to restitution for moving expenses, this court stated that the statute permitted restitution awards for "losses inexorably linked to psychological trauma, as long as they 'resulted from' [the] criminal conduct." *Id.*

We acknowledge that the facts here are not as egregious as the facts in *Bell*. But M.T. testified that she was terrified and could not go into her bedroom, kept thinking that Rodriguez was hiding upstairs, and, although unafraid of Rodriguez, she feared the figure of somebody standing over her and hiding in her house. Because M.T. suffered psychological trauma as a result of Rodriguez's criminal conduct, and losses directly linked to psychological trauma are compensable, the district court did not abuse its broad discretion in awarding restitution.

## D E C I S I O N

The evidence is sufficient to support Rodriguez's second-degree burglary conviction because it shows that he committed criminal damage to property while in the building. The district court did not abuse its discretion by awarding restitution for moving expenses because M.T.'s loss was directly linked to the psychological trauma Rodriguez caused when he trespassed on her home.

**Affirmed.**

10